(115 App. Div. 84)

### VON AU v. MAGENHEIMER et al.

(Supreme Court, Appellate Division, Second Department. October 12, 1906.)

1. FRAUD—SALE OF CORPORATE STOCK—DAMAGES—GOOD WILL AS ELEMENT.
   In an action for false representations inducing a sale of stock in a manufacturing corporation, the good will of the company is an element of value in determining the value of the stock.
   [Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, § 65.]

2. GOOD WILL—ELEMENTS—VALUE—DETERMINATION.
   There is no specific rule for the determination of the value of good will, but each case must be considered in the light of the surrounding facts, and the question of value must within proper limits be left to the jury, whose conclusions must rest on legitimate evidence establishing value.

3. SAME.
   The value of the good will of a manufacturing company may be fairly arrived at by multiplying the average net profits of the company by a number of years, such number being suitable and proper, having reference to the nature and character of the business, and the determination of such proper number of years should be submitted to the jury as a question of fact dependent on the evidence.

**4. Same—Excessive Value.**

Where the net value of the entire property and assets of a manufacturing corporation amounted at the most to $163,000, a finding of the value of its good will at $199,000, was excessive, requiring the setting aside of the verdict.

**5. New Trial—Excessive Damages.**

Where a conclusion reached by a jury results in a verdict for excessive damages, the trial court must on motion set it aside and grant a new trial.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 158.]

Gaynor and Hooker, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Tillie Von Au, as executrix of Otto E. Von Au, against Louis Magenheimer and others. From a judgment for plaintiff and from an order denying a motion for a new trial, certain of the defendants appeal. Reversed and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Charles F. Brown, for appellants.
Alfred E. Sander, for respondent.

RICH, J. This is an action to recover damages claimed to have been sustained in consequence of false representations and deceit, alleged to have been practiced by the appellants upon the plaintiff, inducing her, as the committee of her incompetent husband, to sell to others 483 shares of the capital stock of the Mason, Au & Magenheimer Manufacturing Company, owned by the incompetent, for the sum of $50,000. The capital stock of the corporation was divided into 1,500 shares, of the par value of $100 each. The balance sheet of the corporation of July 1, 1899, which as to tangible assets is not disputed, states their value over and above indebtedness as $167,666.50; but of this amount a dividend of 3 per cent. was declared and paid in July, which reduced the value of the assets of the corporation $4,500, and the book value of the stock, at the time of the sale in August, to $108.77 (plus) per share. Upon this balance sheet the value of the buildings was carried at $91,485.13. There was uncontradicted evidence in the case, given on the part of the plaintiff, that this value was excessive, and that the property would not bring at a sale more than two-thirds of that amount; but, eliminating this evidence from consideration, it is established that the book value of the stock at the time of the sale did not exceed $108.77 per share. The only evidence that the jury were warranted in considering in determining the value of the stock, that did not appear upon this balance sheet, was that establishing the value of the good will of the business, consisting of the earnings and consequent dividend-producing power of the corporation for a series of years, which value the jury fixed at $133.15 per share, amounting as a whole to $199,725.

The only evidence of the value of the good will, outside of that furnished by the earnings and dividend-producing power, appears in the balance sheets from January 1, 1891, to and including July 1, 1895, during which time the corporation carried it as an asset at a

valuation of $20,000. Good will is an element of value which the plaintiff was entitled to have considered by the jury in determining the value of her stock. No instructions were given to the jury as to the rule to be applied in determining such value. It is therefore impossible to ascertain with any degree of accuracy the principle adopted in reaching their conclusion. I do not see how it is possible to avoid the conclusion that the value so placed upon the good will was largely excessive. Upon the valuation of $20,000, placed upon the good will by the directors of the corporation (including plaintiff's husband), during the years 1891 to 1895, the value of the good will of the plaintiff's stock would be $6,440, instead of $64,695, fixed by the jury as its value. The average net yearly earnings of the corporation from January 1, 1891, to January 1, 1900 (a period of nine years), was $25,111.20. After deducting interest on the value of the good will as found by the jury, it will be found that it would require the application of the entire net profits for more than 13 years to reimburse a purchaser who paid the sum allowed by the jury as the value of the good will, during which time he would receive no profits from his investment. The option given Walton does not relieve this situation, nor furnish competent evidence warranting the placing of so large a value upon the good will. His option, which expired on June 1, 1899, was conditioned upon his securing a similar option from a majority of the candy manufacturers in the United States. Had he succeeded in doing this, and in creating a monopoly, it may be that the plant would have been worth, under such circumstances, the option price as an investment; but there is no evidence in this case warranting the assumption that the property had an actual value equalling the sum stated in the option.

The industry of counsel has not resulted in the citation of any case in this country in which a specific rule for the determination of the value of good will is declared. No rigid and unvarying rule can be laid down by the courts in this class of cases. Each must be considered and determined in the light of the facts surrounding and connected with it. Within proper limits the determination of such question must be left to the jury, but their conclusion must rest upon evidence legitimately tending to establish value and supporting their verdict. Our courts have not adopted the rigid rule, established by the English courts, of limiting the value of good will to one year's purchase of the net annual profits of the business, calculated on an average of three years (Mallerish v. Keen, 28 Beav. 453), or that three years' net profits of a business arbitrarily represents the value of its good will (Page v. Ratliffe, 75 Law Times Rep. 371), but, on the contrary, incline to the more equitable rule that the value of good will may be fairly arrived at by multiplying the average net profits by a number of years, such number being suitable and proper, having reference to the nature and character of the particular business under consideration, and the determination of such proper number of years should be submitted to and determined by the jury as a question of fact, dependent upon the evidence before them in each action. It cannot be determined by courts as a question of law.

I am not aware of any principle of law, adopted by the courts of this or any other country, which would sustain a good will value of $199,725, in a case where the net value of the entire property and assets of the corporation amounted, at the most, to but $163,166.50; and where, as in this case, it is clearly apparent that the conclusion reached by the jury results in a verdict for excessive damages, the trial court should, upon motion, set it aside and direct a new trial, and an appellate court has no alternative but to do so, on an appeal from the order denying such motion.

Judgment and order reversed and new trial granted, costs to abide the final award of costs.

WOODWARD and JENKS, JJ., concur. HOOKER, J., being of opinion that the judgment should be reduced, and as so reduced affirmed.

GAYNOR, J. The judgment should be reversed on the ground that the cause of action alleged in the complaint was not made out and the motion to dismiss at the close should have been granted. The fraudulent statements and acts which the complaint alleges to have induced the plaintiff to sell her shares of stock to the defendants were (1) that the defendants represented to the plaintiff that on account of losses in the business the company could not at that time (July, 1899) pay a semi-annual dividend of more than 3 per cent., and that it was doubtful whether it should ever be able to pay larger dividends, (2) that they refrained from declaring a just and adequate dividend, and declared one of only 3 per cent. semi-annually, (3) that they increased their salaries. There is no evidence that the statement as to losses was false, but the contrary. As to the statements about dividends, and the declaring of the dividend, the evidence shows that the regular semi-annual business statement of the company in writing was issued prior thereto, showing the earnings, assets and profits, and that the plaintiff heard it read or the substance of it stated at the meeting of the directors, and was given a copy of it, which she produced at the trial. There is no evidence that this statement was false in any particular, or that the books of the company were falsified, about which much was made on the trial. All the profits, $8,843.66, were declared out in dividends, except $4,343.60 which was retained as surplus. For a company with a capital of $150,000 and sales amounting to as much to carry that much of a surplus was reasonable. The expression of doubt whether the company would thereafter pay larger dividends was a matter of opinion upon which fraud cannot be based. It was expressed on facts open to the plaintiff and known to her. As to the increase of salaries, it was a fact, not a falsehood, and the law gave the plaintiff a remedy if it was excessive. But the complaint does not allege it was excessive. Moreover, the plaintiff having sold her stock with knowledge of the increase, cannot now complain of it as fraudulent. If it was a fraud she acted with full knowledge of it.

To reverse the judgment on the ground that the verdict was excessive would be to instruct the trial court that the evidence made out the cause of action, and that would insure to the plaintiff a verdict on the second trial.