---

· In re HISCOX et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 86*)—COLLECTION AND MANAGEMENT OF ESTATE—DIRECTIONS OF WILL.

Whether the directions contained in a will for the distribution of income or ultimate distribution of the principal are valid or invalid, it is the executors' duty to collect the assets of the estate, and, if they carry on testator's business, to receive and obtain the profits thereof until instructed by a court of competent jurisdiction as to the distribution thereof.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 359; Dec. Dig. § 86.*]

2. EXECUTORS AND ADMINISTRATORS (§ 465*)—ACCOUNTING—PROPERTY TO BE INCLUDED.

Executors will not be relieved from charging themselves in their account with the good will of testator's business because they do not know what it is worth, as it is their duty to make an honest effort to find out.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1990–1992; Dec. Dig. § 465*]

3. EXECUTORS AND ADMINISTRATORS (§ 465*)—ACCOUNTING—PROPERTY TO BE INCLUDED.

Executors will not be excused from charging themselves in their account with the value of trade-marks of proprietary articles, on the ground that the trade-marks were of little value without the formulæ in accordance with which the articles protected by the trade-marks are manufactured, where they, who had been employés in testator's business, knew the formulæ, since it was their duty to disclose them for the benefit of the estate, and they could not use them for their own benefit.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1990–1992; Dec. Dig. § 465.*]

4. WILLS (§ 740*)—AGREEMENTS BETWEEN LEGATEES—PERSONS BOUND.

An agreement of all the beneficiaries under a will, except a daughter and one other, before it was proved, conveying to testator's sons, who were appointed executors, testator's business, with all patents, trade-marks, copyrights, and the good will thereof, would not bind the daughter, who did not acquiesce therein.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1892; Dec. Dig. § 740.*]

5. EXECUTORS AND ADMINISTRATORS (§ 29*)—APPOINTMENT OF EXECUTOR—RETROACTIVE EFFECT.

The sons not having renounced their right to act as executors and refused to qualify, the moment they did qualify, their appointment as executors to carry on the business related back to the date of testator's death, and they afterwards carried it on as executors, charged with the performance of duties and obligations resting upon them by virtue of that position.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 177; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EXECUTORS AND ADMINISTRATORS (§ 465*) — ACCOUNTING — PROPERTY TO BE INCLUDED.

It would be no answer to the claim of the daughter to an accounting for the profits of the business that creditors of testator might have valid and enforceable claims on the profits of the business by virtue of an assignment by testator of trade-marks as further security for payment of notes, payable out of the profits of the business, since, if the indebtedness had not been paid, the daughter, as legatee, could call on the executors, when they received profits, to use them in accordance with the agreement, binding upon testator, or at least to preserve them, so that, either under the agreement or by operation of law, they might be used to pay testator's debts.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1990–1992; Dec. Dig. § 465.*]

7. EXECUTORS AND ADMINISTRATORS (§ 466*)—ESTOPPEL BY LEGATEE TO REQUIRE ACCOUNTING.

The fact that testator's widow and children agreed to a distribution among them of mining stocks belonging to the estate, if it was in effect an agreement to set aside the terms of the will, should not be extended beyond the property immediately affected thereby, and would have no bearing upon a daughter's right to demand an accounting of the profits of the business, or as to other assets of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1993–1995; Dec. Dig. § 466.*]

8. EXECUTORS AND ADMINISTRATORS (§ 472*)—ACCOUNTING—DUTY TO MAKE CREDITORS PARTIES.

Executors, asking a settlement of their accounts, must, under Code Civ. Proc. § 2728, relating to settlements and citations thereupon, cause to be cited upon their accounting all creditors or persons claiming to be creditors of decedent, except such as by vouchers attached to the account filed appear to have been paid, and they cannot defend against a demand of a legatee that they account for certain assets or profits of decedent's business on the ground that creditors of decedent were not made parties to the proceedings and should be heard before any judgment respecting the distribution of the assets is made.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2027; Dec. Dig. § 472.*]

9. EXECUTORS AND ADMINISTRATORS (§ 472*)—ACCOUNTING—PARTIES.

Where a will directed that a certain sum out of the profits of decedent's business should be paid testator's daughter each year, and the executors in their account failed to show the condition of the business, and creditors under the terms of the will and under the terms of certain agreements among the beneficiaries might have claims against the income of the business superior to those of the daughter, and are not parties to the proceedings for the accounting, it was improper to direct the executors to pay the annual sum from the net profits of the business.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2027; Dec. Dig. § 472.*]

Appeal from Surrogate's Court, Suffolk County.

Proceedings for settlement of the estate of David Hiscox. To the account of Everett S. Hiscox and another, executors, Harriet M. Hughes filed objections. From an order directing the executors to amend their account, they appeal. Modified and affirmed.

Argued before WOODWARD, JENKS, BURR, THOMAS, and RICH, JJ.

Thomas Young, for appellants.

Timothy M. Griffing, for respondent Harriet M. Hughes.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J.   David Hiscox died January 25, 1906.   He left a will, dated October 6, 1905, and proved March 19, 1906.   On the same day his sons, Everett S. Hiscox and Jesse F. Hiscox, qualified as executors.   At the time of his death he was engaged in the business of the manufacture and sale of proprietary medicines and toilet articles.   By his will he provided, among other things, as follows:

"I appoint my two sons Everett S. Hiscox and Jesse F. Hiscox as my executors, to carry on the business now conducted by me under the name of the Hiscox Chemical Works, and to continue and conduct said business under said name during the lives of my said sons Everett S. Hiscox and Jesse F. Hiscox, and the survivor of them, or in case all my debts and obligations owing by me shall be fully paid and discharged."

He then gave directions as to how the profits arising from his business were to be used by the said executors, and, among other things, provided that they were each to be paid the sum of $3,000 annually for all services which they should render to the business of the Hiscox Chemical Works, unless the profits of said business amounted to more than $32,000 a year, in which case there was a provision for an increase of salary.   The testator was the owner of certain trade-marks used in connection with the said business and of certain formulæ in accordance with which the articles above referred to were manufactured.   The business was a lucrative one. There was some evidence that in the year immediately preceding his death the profits were in the neighborhood of $32,500.   After his death the business was carried on by his sons, the above-named executors, and, although the exact amount of the profits therefrom during the years 1907 and 1908 is not disclosed, it does appear that these profits were considerably larger than during the last year of the testator's life.   In May, 1907, Harriet M. Hughes, a daughter of decedent and a legatee under the said will, instituted proceedings to compel these executors to account.   Thereafter they filed a petition for a voluntary accounting, and the proceedings were thereupon consolidated.   To the account filed in the voluntary proceedings, Mrs. Hughes filed objections.

No inventory of the personal property belonging to the estate of the deceased seems ever to have been filed; but, when the executors filed their account, they charged themselves with the amount of an inventory of stock, cash in bank, and accounts receivable, which had been made by the said David Hiscox in connection with the said business and about a month before his death.   To this was added a large amount of mining stocks declared by them to be of no value, so that the amount of personal property with which they charged themselves was precisely the same as that shown in the inventory above referred to.   Nothing was included in the amount for the value of the good will of the business, which was presumably very large (Von Au v. Magenheimer, 115 App. Div. 87, 100 N. Y. Supp. 659; Matter of Silkman, 121 App. Div. 202, on page 218, 105 N. Y. Supp. 872, affirmed 190 N. Y. 560, 83 N. E. 1131), nor for the formulæ or trade-marks belonging to the deceased, nor for the profits of the business carried on by the executors since the date of his death.   The Surro-

gate's Court thereupon made an order directing these executors to amend their account—

"so that it shall show the exact condition of the estate of the said David Hiscox, deceased, at the date of his death, and shall show the entire conduct of the business of the Hiscox Chemical Works subsequent to that date, including all sales and the expenses of the conduct of the said business, so as to show the annual profits thereof."

From that order of the surrogate this appeal is taken.

The excuses offered by these accounting executors for failing to charge themselves with these valuable assets and income of the estate are, first, that some of the provisions of the will are invalid. Whether the directions contained in the will for the distribution of the income or for the ultimate disposition of the principal of the estate are valid or invalid, it is their duty to collect the assets of the estate and, if they carry on the business, to receive and retain the profits of the business until properly instructed by a court of competent jurisdiction in regard to the distribution thereof.

Second, that the good will, formulæ, and trade-marks above referred to are of little value, and that not easy to ascertain. It is no answer to say that they do not know what the good will of the business is worth. It is their duty to make an honest effort to find out. Nor is it any answer to say that the trade-marks are of little value without the formulæ in accordance with which the articles protected by these trade-marks are manufactured. On the examination before the surrogate, one of the executors testified with regard to one of the trade-marks:

"In connection with the recipes, it is very valuable to me. * * * I refuse to tell what the formula is, because it is valuable to me. It is valuable to me as the manufacturer under that name. I don't know how valuable it is to me. I don't know how many thousand dollars it is worth."

These formulæ belonged to the testator, and not to his clerks or his employés. It would establish a new principle in the law of trusts if a trustee, who was in possession of valuable information of this character, should refuse to disclose it for the benefit of the estate, because he had acquired his knowledge while a clerk of the testator, and now desired to make use of it for his own benefit and advantage.

Third, that the contestant, Mrs. Hughes, is not concerned with the disposition of the profits of the business, first, because under agreements made by David Hiscox in his lifetime these profits are pledged toward the payment of certain debts of the deceased, and, second, because the business has not been carried on by these men as executors under the will, but as individuals and for their own benefit, under an agreement made with the widow and all of the children of the deceased, except Mrs. Hughes, executed before the will was proved. It does appear that immediately after their father's death, and before the will was proved, an agreement was prepared and executed by the widow and all of the children of the said David Hiscox, who were also the only beneficiaries under his will, except a son, who is incompetent, and Harriet M. Hughes, the contestant here, by which they conveyed to the said Everett S. Hiscox and Jesse F. Hiscox all their interest in the business carried on under the name of Hiscox

Chemical Works, together with all patents, trade-marks, copyrights, and the good will of the said business. Thereafter these men, who according to their own testimony had been practically carrying on the entire business during their father's lifetime for a salary of $2,000 a year each, and whose compensation under the will was fixed at $3,-000 a year, immediately raised the salary of each to the sum of $12,-000 a year, and so conducted and managed the business as to practically absorb for their own benefit the greater portion of the profits thereof. Whether this agreement, under the peculiar circumstances connected with its execution, was of any validity whatever, even as against those who did execute the same, it was of no force and effect as against Mrs. Hughes, who declined to be bound thereby. Whatever might have been the case if they had renounced their right to act as executors and refused to qualify, they did not do so, and the moment that they did qualify their appointment as "executors to carry on the business" related back to the date of the testator's death. Matter of Silkman, supra. So far, at least, then, as Mrs. Hughes is concerned, they are not carrying on the business under any agreement for their own benefit, but as executors under the last will and testament of David Hiscox, deceased, and charged with the performance of the duties and obligations resting upon them by virtue of their trust relation. A more utter disregard of the obligations of a trust relation is seldom exhibited than appears in the conduct of these accounting executors. They admitted that they had ignored their sister, the contestant here, in regard to the conduct of the said business. One of the accounting executors testified:

"She was not consulted in reference to the amount of salary I was to have. I don't think she was entitled to a voice in that. I don't think she was entitled to any voice in fixing my salary. If myself and my brother had seen fit to charge a salary sufficient to absorb all the profits, she, as a legatee under the will, I think, would have no voice in the matter."

It would be unfortunate, indeed, if courts were powerless to bring to a sense of duty an executor who seemed to appreciate so little the importance and responsibilities of his position.

Nor is it any answer to the claim of Mrs. Hughes to be advised as to the extent of the profits of the said business that certain creditors of these decedents may have valid and enforcible claims thereon. In December, 1882, the firm of Hiscox & Co., of which the said David Hiscox was then a member, transferred to the firm of Dauchy & Co. certain trade-marks then belonging to the firm as security for an existing indebtedness of some $60,000, and such further sums as might become due and payable by the said firm of Hiscox & Co. to the said firm of Dauchy & Co. It does not appear from the evidence in this case that the said firm of Dauchy & Co. have ever held these trade-marks in any other way than as a possible security for such indebtedness, or that they have ever actually reduced them to their own possession or control, and either manufactured under them, or sold and disposed of them in satisfaction of any debt. Neither does it appear what the present condition of indebtedness to the said firm is.

In May, 1900, the said David Hiscox, together with his wife and his sons, Everett S. Hiscox and Jesse F. Hiscox, entered into an agree-

ment with one Frederick Rawolle, who had been a partner of the said David Hiscox up to that time, by which the said firm was dissolved, and the said Hiscox purchased his interest in the said firm for the sum of $180,000, which indebtedness was afterwards reduced to $130,000, for which he gave his notes, 240 in number, the first of which is payable in May, 1910, and the others of which will become payable on the 15th of each and every succeeding month thereafter until the entire indebtedness is paid. As security for the payment of these notes the parties to the agreement, other than the said Rawolle, and including the said Everett S. Hiscox and Jesse F. Hiscox, agreed to carry on the said business so long as it continued profitable, and out of the net proceeds thereof, after allowing to the said Everett S. Hiscox and Jesse F. Hiscox a salary not exceeding $2,000 per annum, to pay and discharge all of the said notes made by the said Hiscox to the said Rawolle. As further security for the carrying out of that agreement, the said Hiscox also assigned to the said Rawolle, subject to the claims of the firm of Dauchy & Co., the trade-marks above referred to. If this agreement is still in force, as a person interested in the estate of the said David Hiscox, deceased, the said Harriet M. Hughes is entitled to call upon the executors, when they receive profits, to use them in accordance with the terms of the agreement binding upon her testator, or at least to preserve them, so that either under the agreement or by operation of law they may be used to pay and satisfy his debts, rather than be put in their own pockets.

Finally, they assert that she is estopped from making any claim under the said will. It appears that in September, 1906, an agreement was entered into between the widow and the children of the said David Hiscox, including the two sons who are the accounting executors here, and Mrs. Hughes, who is the contestant, by which certain mining stock belonging to the deceased was distributed between them. The basis of such distribution was that one-third part of the full-paid stock was to be equally divided among the five children. As to any stock which was not full-paid, Mrs. Hughes was given the right either to take such stocks and pay the balance due thereon, or turn over the stocks to the said Everett S. Hiscox and Jesse F. Hiscox, who would pay her in cash an amount equal to the amount already paid thereon. In pursuance of such agreement it appears that certain of the full-paid mining stock was delivered to Mrs. Hughes, and that as to the unpaid stock she turned the same over to her brothers, receiving from them a check for $119.33 on account thereof. If it be conceded that this was in effect an agreement to set aside the terms and provisions of the will, it should not be extended beyond the property immediately affected thereby, and it could have no bearing upon her right to demand an accounting with regard to the profits of the business, or with regard to the other assets of the estate. In addition, it appears from the account filed by these executors that all of these mining stocks were of no value.

Nor is it any answer on the part of these executors to this application to say that the creditors of the decedent are not parties to these proceedings, and should be heard before any judgment is made respecting the disposition of the assets of the estate or the profits and

proceeds of the business. If they are not parties to such proceeding, it is the fault of these accounting executors, whose duty it was under the statute to cause to be cited upon this accounting all creditors or persons claiming to be creditors of the decedent, except such as by vouchers annexed to the account filed appear to have been paid. Code Civ. Proc. § 2728. In that portion of the will of the decedent relating to a distribution of the profits of the business to be carried on under its terms was a direction to the effect that $1,000 a year should be paid to the said Harriet M. Hughes, or in a case of her death to her children, so long as the trust attempted to be created under the said will should continue. The Surrogate's Court has further provided in its decree that the executors shall pay from the net profits of the business the sum of $1,000 annually to the said Harriet M. Hughes.

In the present state of the accounts of these executors we think that the court had no power to direct this payment. The creditors of the decedent, under the terms of the will and under the terms of the agreements hereinbefore referred to, may have claims upon the income of this business prior and superior to those of the contestant here. They are not parties to this proceeding, and until they are brought in, as they should be, and the rights of all parties settled and determined, no direction should be made for the payment of any portion of the said estate or of the income thereof. So much, therefore, of the decree appealed from as directs the payment to Harriet M. Hughes out of the net profits of the income of the Hiscox Chemical Works of the sum of $1,000 annually, is reversed, and the decree is in this respect modified, and, as so modified, it is affirmed, without costs to either party as against the other. All concur.