MAY M. GUGEL et al., Respondents, *v.* EVERETT S. HISCOX et al., Appellants.

Judgment — when judgment is res adjudicata in subsequent action between same parties — effect and weight of decision and views of Appellate Division in case sent back for a new trial.

1. While a judgment does not operate as an estoppel in a subsequent action between the parties thereto, except as to every fact litigated and decided therein, such a judgment is final as to the facts litigated and decided, which have such a relation to a subsequent issue that their determination is necessary to a decision therein.

2. Where a cause is sent back by the Appellate Division for a new trial the case is to be presented as though it had never been heard before. A party is entitled to the independent judgment of the trial judge upon his examination of the facts before him, and nothing is binding upon such judge except the rule of law laid down by the appellate court. His conclusions may be influenced by the views expressed by the higher court as to the weight of evidence on

10

questions of fact, as by any other competent argument, but his own final convictions on the evidence must control him when he makes his findings.

*Gugel* v. *Hiscox*, 154 App. Div. 956, reversed.

(Argued October 19, 1915; decided November 16, 1915.)

APPEAL from a final judgment, entered December 3, 1913, after affirmance by the Appellate Division of the Supreme Court in the second judicial department of an interlocutory judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas Young* and *Robert S. Pelletreau* for appellants. The trial judge erroneously refused and failed to try this case *de novo*, and refused to examine or consider the new evidence adduced. (*Sticht* v. *Buffalo Cereal Co.*, 195 N. Y. 70; *Ungrich* v. *Ungrich*, 141 App. Div. 487.) The necessary parties for the determination of the claims made by the plaintiffs in this action are not before this court, and it was error to proceed to judgment until such necessary parties were brought in. (16 Cyc. 181, 182; Story Equity Pleading, § 76; *Sherman* v. *Parish*, 53 N. Y. 483; *Mahr* v. *N. U. Fire Ins. Socy.*, 127 N. Y. 452; *Steinbach* v. *Prudential Ins. Co.*, 172 N. Y. 471; *Mawhinney* v. *Bliss*, 124 App. Div. 609; *Matter of Hiscox*, 135 App. Div. 848; *Keenan* v. *Keenan*, 12 N. Y. Supp. 747.) The court erred in refusing to consider as *res adjudicata* the findings and judgment in *Rawolle* v. *Hiscox*. (*Clement* v. *Moore*, 135 App. Div. 723; *Culross* v. *Gibbons*, 130 N. Y. 447; *Williams* v. *Barkley*, 165 N. Y. 48; *City of New York* v. *N. Y. C. Ry. Co.*, 193 N. Y. 543; *Stokes* v. *Foote*, 172 N. Y. 327; *Embury* v. *Conner*, 3 N. Y. 511; *Doty* v. *Brown*, 4 N. Y. 71; *White* v. *Coatsworth*, 6 N. Y. 137; *Krekeler* v. *Ritter*, 62 N. Y. 372; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Pray* v. *Hageman*, 98 N. Y. 351; *Lorillard* v. *Clyde*, 122 N. Y. 41; *Reich* v. *Cochran*, 151

N. Y. 122.) The trial court erred in rendering judgment without first acquiring jurisdiction over Mary M. Hiscox, a party to the agreement attacked in this suit. (*Mahr* v. *N. U. Fire Ins. Socy.*, 127 N. Y. 452.) The fact that the trial judge deemed himself concluded by the decision of the Appellate Division and that he, therefore, found in favor of the plaintiffs, constituted a mistrial. (*Morehouse* v. *B. H. R. R. Co.*, 185 N. Y. 520.)

*I. R. Oeland* and *George C. Buechner* for respondents. The second trial was a trial *de novo* and the law established on the first appeal was controlling and binding on the second trial judge. (*Gugel* v. *Hiscox*, 138 App. Div. 61; *Cluff* v. *Day*, 141 N. Y. 580; *Matter of Laudy*, 161 N. Y. 429; *Mygatt* v. *Coe*, 142 N. Y. 78; *Trombley & Carrier Co.* v. *Seligman*, 133 App. Div. 525; *Driscoll* v. *Healy*, 147 App. Div. 522; 210 N. Y. 558; *Barnes* v. *Midland R. R. Ter. Co.*, 147 App. Div. 89.) There is no defect of necessary parties. (*Briggs* v. *Partridge*, 64 N. Y. 357; *Henricus* v. *Englert*, 137 N. Y. 488; *Spencer* v. *Huntington*, 100 App. Div. 463; 183 N. Y. 506; *Klein* v. *Mechanics & Traders' Bank*, 145 App. Div. 615; *Case* v. *Case*, 203 N. Y. 263.) The judgment in the *Rawolle* action is not *res judicata* in this. (*Aldridge* v. *Walker*, 151 N. Y. 527; *Unglish* v. *Marvin*, 128 N. Y. 380; *Lewis* v. *O. N., etc., Co.*, 125 N. Y. 341; *Shaw* v. *Broadbent*, 129 N. Y. 114; *Woodgate* v. *Fleet*, 44 N. Y. 1; *Stokes* v. *Stokes*, 155 N. Y. 581; *Stokes* v. *Foote*, 172 N. Y. 327; *Kay* v. *Whittaker*, 44 N. Y. 565; *Rafferty* v. *Williams*, 34 Hun, 544; *Van Allen* v. *Rogers*, 5 Misc. Rep. 420.)

POUND, J. David Hiscox died January 25, 1906, survived by his widow, Mary M. Hiscox, the plaintiffs, who are two of his daughters, the defendants, who are his two oldest sons, and another son, Frederick Hiscox, and another daughter, Harriet M. Hughes. The defendants had, prior to the death of the father, been employed by him in the

business of manufacturing hair balsam and other proprietary remedies under the name of the Hiscox Chemical Works, and for some years prior to his death had charge of the business for him. David Hiscox left a will in which he provided for carrying on the business by the defendants as trustees until the payment of his debts or death of the survivor of the defendants, then for the division thereof, after making provision for an incompetent son, by giving one-third to his wife and the remaining two-thirds in equal shares to plaintiffs, defendants and the third daughter. Meantime the trustees were to pay annually to the wife $4,000, for the use of the incompetent son $1,000, to each daughter $1,000, to themselves for managing the business $3,000 based on an estimated net profit of $32,000 annually, to be increased if the business increased its profits. He also directed that the husband of the third daughter be employed in the business at a salary of $2,000. He also directed that the surplus profits be accumulated until they should amount to twice the sum necessary to pay certain Rawolle notes and that these notes should then be paid. This will was admitted to probate by the Surrogate's Court of the county of Suffolk on March 19, 1906. On January 31, 1906, the plaintiffs and the widow of David Hiscox executed an agreement with defendants whereby they turned over to defendants all their interest in the Hiscox Chemical Works under the will in consideration of the same annual payments for life as the will provided for without any share in the surplus profits of the business, so that the defendants would ultimately become the sole owners of the business, subject only to the rights under the will of the third daughter, who did not join in the agreement. The annual payments were to cease if the business became unprofitable or passed out of the hands of defendants. The widow also obtained a release of the interest of the defendants in the real estate owned by testator other than that upon which the factory was situated. Defendants

assumed and agreed to pay all the indebtedness of the business of Hiscox & Co. The remaining personal estate consisted chiefly of mining stock of no value. In performance of their agreement plaintiffs on April 30, 1906, executed to defendants a deed of the property on which the Hiscox Chemical Works were situated. In January, 1909, the business meanwhile having been very profitable, plaintiffs brought this action to set aside the agreement and deed as fraudulent and void, alleging that they were induced by the false representations of their brothers whom they trusted, to surrender their interest in a lucrative business for an inadequate consideration.

On the first trial judgment was rendered for the defendants dismissing the complaint on the merits. The Appellate Division of the Supreme Court in the second department reversed this judgment and ordered a new trial. (*Gugel* v. *Hiscox*, 138 App. Div. 61.) The agreement was characterized as unconscionable, and as one obtained by defendants by a betrayal of trust and confidence. The court said that it was incumbent upon defendants to show affirmatively that no fraud was practiced and that "the presumption that the agreement and deed were void was not overcome by the evidence." The court proceeds upon the theory that because the business was valuable in 1911 the value of plaintiffs' interests was in 1906 far in excess of what they received for it.

After the decision of the Appellate Division and before the second trial of this case, in an action brought by the executors of the last will and testament of Frederick Rawolle, deceased, against plaintiffs and defendants and all others representing the estate of David Hiscox, it was found among many other things, that Frederick Rawolle and David Hiscox had been partners under the name of Hiscox & Co.; that the partnership was dissolved in May, 1900, Rawolle retiring; that Hiscox assumed the indebtedness of the firm and agreed to pay Rawolle $180,000 for his interest in the business in 240 monthly installments of

$750 each, beginning May 15, 1910; that by the dissolution agreement defendants and their mother agreed to carry on the business if it continued to be profitable and pay the Rawolle notes, and that in default of payment Rawolle might take charge of the business and carry it on until the notes were paid out of the profits; that the business was thereafter carried on under the name of Hiscox Chemical Works; that David Hiscox at the time of his death was insolvent and that the business of the Hiscox Chemical Works was also insolvent; that the liabilities of the estate and the business amounted to upwards of $163,000, and that the Rawolle agreement was a lien and charge against the Hiscox estate in conflict with the terms of the will which made a different provision for the payment of the notes and that the deed in this suit was fraudulent and void as against the Rawolle estate. A receiver was appointed to take charge of the Hiscox Chemical Works and pay the Rawolle indebtedness out of the profits.

After the decision of the Rawolle case this case came on for a second trial. On the second trial the judgment roll in the Rawolle case was offered and received in evidence on behalf of the defendants. Although this judgment is not *res adjudicata* as between the defendants that the agreement in this suit is fraudulent and void, the findings are evidence of the relevant facts found. A judgment does not operate as an estoppel in a subsequent action between the parties except as to such facts as are litigated and decided therein. (*House* v. *Lockwood,* 137 N. Y. 259, 268), and the question of fraud was not litigated between the codefendants in the Rawolle action. But the Rawolle judgment is final as to the facts litigated and decided therein which have such a relation to this issue that their determination is necessary to a determination of this issue. Such facts include the findings as to the Rawolle agreement, the insolvency of the David Hiscox estate and the business at the time of his death, and the

indebtedness of the estate and the business, all of which have a direct bearing on the good faith of defendants in dealing with the plaintiffs herein. Those facts were properly before the trial justice for his consideration and were in the highest degree pertinent to the issue of fair dealing between the parties hereto.

Indeed at the close of the evidence the trial justice expressed himself somewhat favorably to defendants on the merits, but said: "*Whatever my own views about it are, the findings of the Appellate Division are binding on me.*" Defendants' counsel then urged that on a new trial and different evidence he did not understand that the Appellate Division had dictated what the action of the trial justice should be. The case was then taken under consideration, and on December 15, 1911, the trial justice handed down a memorandum of opinion as follows: "The decision of the Appellate Division reversing the former judgment for defendants in this case is conclusive at this trial and I find, *therefore,* in favor of the plaintiffs." It thus appears that the memorandum was not an equivocal or careless statement which might relate only to the law of the case, but was a certificate that the court was concluded on the facts by the reversal of the former judgment.

On this decision interlocutory judgment was entered, which was affirmed on appeal by the Appellate Division, and on the report of the referee named therein to take the account of defendants final judgment was entered at Special Term, from which judgment this appeal is taken to review the determination of the Appellate Division affirming the interlocutory judgment.

The decision of the Appellate Division on the first appeal was that "the exceptions present reversible error. The judgment must, therefore, be reversed and a new trial granted." Nothing in this decision was binding upon the trial judge except the rule of law laid down as to the burden of proof. The Appellate Division made no

findings of fraud. "For the purposes of the succeeding trial the case was to be presented *de novo,* as though it had never been heard before." (*Sticht* v. *Buffalo Cereal Co.,* 195 N. Y. 70, 75.) The first question raised on this appeal is that the defendants did not have such a new trial. They were entitled to the independent judgment of the trial justice on the facts, but it seems clear that the trial justice proceeded upon the theory that the Appellate Division had so laid down its views with respect to the facts on the former trial that he was bound to find fraud as a fact upon this trial. He was bound to examine the evidence on the trial before him and he was not bound by the views of the Appellate Division on the evidence on the former trial as expressed in the opinion of that court. Yet he placed his decision squarely on the reversal of the former judgment and frankly said that decision was conclusive and that, *therefore,* he found for the plaintiffs, and this after mature consideration of the effect of the former reversal. The learned trial justice was not only free to pass upon the facts without becoming chargeable with disrespect or disobedience to the higher court but he was bound to form his own conclusions thereon notwithstanding the vigorous expressions of opinion by that court. In cases where differing conclusions may be drawn by different triers of fact, it is imperative that the responsible trier of fact should not abdicate his functions. His conclusions may be influenced by the views expressed by the higher court as to the weight of evidence on questions of fact, as by any other competent argument, but his own final convictions on the evidence must control when he makes his findings. It follows that defendants herein did not have the benefit of a decision on the facts "as though the case had never been heard before," and the case must be sent back to the trial justice in order that he may consider the evidence and make his own decision thereon.

The defendants asked on the trial that the complaint be dismissed on the ground that Mary M. Hiscox, the

widow of David Hiscox, deceased, should be made a party defendant. The same motion was made as to Frederick Rawolle or his estate, Dauchy & Co., who were creditors of Hiscox & Co., whose claim David Hiscox agreed to pay, and Frederick Hiscox. Both motions were denied. This objection was not raised by demurrer or answer, but it should have been granted as to the representatives of Mary M. Hiscox, deceased, unless within a reasonable time they were brought in. All parties to the agreement who would be affected by the cancellation thereof should be brought before the court in this suit so · that they may be heard in their own behalf before any direction is made for the payment of moneys by the defendants. (*Steinbach* v. *Prudential Insurance Co.*, 172 N. Y. 471; *Mahr* v. *Norwich Union Fire Ins. Society*, 127 N. Y. 452; *Matter of Hiscox*, 135 App. Div. 848.) But Frederick Rawolle's estate, Dauchy & Co. and Frederick Hiscox are not affected by the agreement or the cancellation thereof and it was neither necessary nor proper to include them as parties.

The appellants in their reply brief challenge the correctness of the account of the defendants as stated by the referee and the final judgment entered thereon. In so doing they overlook the fact that the final judgment is not before the court on this appeal (Code Civil Pro. § 1336), and that such exceptions are prematurely brought to our attention.

The order of the Appellate Division affirming the interlocutory judgment herein and said interlocutory judgment should be reversed and the case remitted to Special Term for further proceedings in conformity with the opinion of POUND, J., with costs in the Appellate Division and in this court to defendants.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur.

Ordered accordingly.