ALICE F. HALLADAY, Plaintiff, *v.* GEORGE H. WORTHINGTON et al., Defendants.

(Supreme Court, Erie Equity Term, February, 1917.)

Chattel mortgages — filing of — lien of — assignment for benefit of creditors — what does not constitute a fraud on creditors — jurisdiction — evidence — statutes — assignments — judgments.

Neither the omission to file a chattel mortgage executed in good faith as security for a *bona fide* debt nor the mortgagor's retention of possession of the mortgaged property is necessarily evidence of fraud.

A mortgage upon a collection of canceled postage stamps valuable as a curiosity or historical exhibit was given to plaintiff as security for a loan of corporate stock and, in the expectation that its use by defendant would be temporary, the collection was allowed to remain in his possession as he was continually adding to it and he informed plaintiff that as soon

as he had certain stamps arranged he would send the collection to her, but after his failure to pay the note accompanying the mortgage and before he had made a general assignment for benefit of creditors plaintiff demanded and received possession of the stamps. *Held,* that in the absence of proof of fraudulent intent on the part of plaintiff the mortgagor's retention of the mortgaged property did not constitute a fraud upon his creditors.

An unfiled chattel mortgage is good between the parties and cannot be attacked by creditors of the mortgagor or his assignee for the benefit of creditors until they have executions or attachments or other process under which they can make a levy.

Judgment creditors armed with process and ready to make a levy have no right to levy upon any stamps which defendant had voluntarily delivered to plaintiff to secure or pay his debt to her.

The fact that the law of the state in which the mortgaged property was when the mortgage was made permits an assignee for creditors to contest the right of the mortgagee under an unfiled chattel mortgage, in direct contradiction to the law of the state of New York, is ineffective, as the mortgagor and others having submitted themselves to the jurisdiction of a New York court are governed by New York law as to remedies.

The statutes of both states as to the filing of chattel mortgages and the rights of creditors to take advantage of the nonfiling thereof being the same, the means by which the creditor takes advantage of the nonfiling relates to the remedy and is governed by the *lex fori.*

Where a note evidencing a debt and a chattel mortgage given as collateral thereto represents transactions entered into in good faith by competent parties, the mortgage, though not filed as required by law, is evidence of the transaction actually entered into at the time it was given.

The mortgagor having voluntarily delivered the mortgaged property to plaintiff neither the mortgagor, his assignee for creditors nor any other creditor may question the validity of plaintiff's claim to a prior lien, as, if the mortgage was void under the laws of the state in which it was executed and delivered, it still was evidence of the transaction between the parties and of the promise made and the security pledged, and if merely voidable it had never been legally avoided by any creditor before the mortgagee took possession.

The Assignment Law of Ohio (General Code, §§ 11104, 11105), being in opposition to the common law and to the law of the state of New York, is not extraterritorial.

Where an act done is valid in the state where the parties are and where the personal property to which said act relates is, it will be held valid in the courts of that state and also by interstate comity in the courts of the other states.

Where the mortgagor's assignee for the benefit of creditors and a committee under agreement took assignments of the collection of stamps subject to plaintiff's lien they cannot dispute the validity thereof.

Such of the stamps as were added to the collection after the mortgage was given to plaintiff and which came into her possession by the defendant's voluntary delivery and not by reason of the mortgage were subject to the lien thereof, and after the satisfaction of her lien the mortgagor and his assignee had an equitable lien on any stamps left and upon all surplus moneys acquired from their sale.

ACTION to establish a lien.

Wallace Thayer (Adelbert Moot, of counsel), for plaintiff.

Kenefick, Cooke, Mitchell & Bass (Daniel J. Kenefick, Fritz Fernow, Harrison B. McGraw), for defendants National Liquidating Company, Harrison B. McGraw, Warren S. Hayden, John F. Hagey and Wilber M. Baldwin.

BISSELL, J.  This action has been brought to establish a first lien, which the plaintiff claims to have on the George H. Worthington collection of postage stamps, arising out of the following transaction: On May 7, 1912, the plaintiff was the apparent owner of 1,500 shares of the capital stock of the American Chicle Company, which was then quoted in the market at $225 per share. The defendant George H. Worthington borrowed this stock from the plaintiff, who was

a friend of himself and his family, for use as additional collateral security for an indebtedness that he had incurred, or was about to incur, to the Citizens Savings and Trust Company of Cleveland, Ohio. At the same time he gave the plaintiff his promisory note, payable at his office in Cleveland " on or before two years from date," for the amount of the then value of the stock, to wit, $337,500; and as security for the note he executed and delivered to the plaintiff a chattel mortgage upon his " collection of postage stamps of the world contained in 60 volumes more or less, and known as the Worthington collection, at present stored in a room in the vault of the Cleveland Trust Company, and in the safe in room 612 Hickox Building, Cleveland, Ohio." The note did not bear interest, but it was expressly agreed between the parties that in lieu of interest during the two years, if the note should be outstanding for that length of time, the plaintiff should receive the dividends on the stock as theretofore, and then amounting to eighteen per cent per annum; and that the stock should remain in the name of the plaintiff on the books of the Chicle Company. The defendant guaranteed the value of the stock at the amount of the note. In compliance with the request of the defendant, who stated to the plaintiff that the filing of the chattel mortgage would be an injury to his credit, it was not filed for record; and the stamps were not at that time removed into the possession of the plaintiff from the vault and safe where they had been deposited for safe keeping.

The Chicle stock was thereafter and on the 6th of May, 1915, sold by the bank to which it had been pledged by the defendant Worthington, and transferred out of the name of the plaintiff, so that she ceased to draw dividends upon it from that time.

The defendant's note was not paid at maturity, May 7, 1914; and the plaintiff did not get possession of the stamps until a later time, the deliveries of them to the plaintiff beginning September 25, 1914, and continuing until June 28, 1915, when the last delivery was made.

Between the 30th of July, 1915, and the 20th of October, 1916, the plaintiff received in monthly installments upon defendant's indebtedness, either from the sale of stamps of the Worthington collection, or advancements thereon by an agent to whom some of the stamps were intrusted for sale, the aggregate sum of $25,500; but no other payments have been made to her upon the amount due on the note.

The defendant Worthington had been for a period of years possessed of large means, and engaged in important business enterprises which required the borrowing of large sums of money from banking institutions; and by July 30, 1915, his indebtedness had become so great that he was financially embarrassed, and entered into an agreement with the defendants Warren S. Hayden, John F. Hagey and Wilber M. Baldwin, as a committee, the agreement reciting his inability to liquidate his indebtedness, and providing among other things that upon the request of the committee he would transfer to them or their nominees in trust all of his property and all income therefrom " subject to any lien or encumbrance then existing," for the purpose of paying his creditors; and providing further that the committee might require any part or all of the properties of the defendant to be transferred to a corporation to be organized by the committee, and that the committee might exercise through the medium of such corporation the powers delegated to it by said agreement; the agreement further providing that it

10

should not become operative and in force until a written declaration to that effect signed by the committee should be mailed to the defendant. On August 17, 1915, the agreement became operative by the service of such notice, and on the following day the defendant executed and delivered to the committee a specific assignment of his entire collection of postage stamps wherever located, but " subject to whatever lien there is thereon upon the part of Alice P. Halladay," the plaintiff. The provisions of the general assignment to the committee of July 30, 1915, had enumerated among the defendant's assets " stamps valued at one million dollars, pledged as collateral to a loan of 1,500 shares of American Chicle Company's common stock to Mrs. Halladay of Buffalo. Par value of note $337,500."

On September 27, 1915, a general assignment under the laws of the state of Ohio was made by the defendant Worthington to the defendant Harrison B. McGraw, of Cleveland, for the benefit of creditors of the defendant Worthington, which deed of general assignment was on that day duly filed in the Court of Insolvency in Cuyahoga county, Ohio.

No suits by creditors seeking money judgments were, or have been, instituted against the defendant in Ohio or elsewhere, nor has any judgment of any kind been obtained against him, and he has not been thrown into bankruptcy under the National Bankruptcy Act.

The defendants other than George H. Worthington, in contesting the plaintiff's claim to a prior lien upon the Worthington collection of stamps, urge that the plaintiff never owned the borrowed and pledged 1,500 shares of the capital stock of the American Chicle Company, and that they at all times belonged to the

defendant Worthington, his arrangement with the plaintiff in reference thereto being one which simply assured to the plaintiff the dividends upon the stock; and that therefore there was no consideration for the $337,500 note. It appears from the undisputed evidence that the plaintiff became the possessor of these shares of stock not later than the year 1901, and had received dividends upon them from that time until they were transferred to the Citizens Savings Bank upon their sale by the bank as a pledge for the indebtedness of the defendant Worthington; and a careful scrutiny of all of the transactions connected with the care, control and use of this stock from the time the plaintiff became the possessor of it in 1901, until it was sold as a pledge in 1915, fails to disclose any evidence having any probative force whatever that the plaintiff was not herself the absolute owner of the stock, with the right to loan it to the defendant Worthington, as was done by her May 7, 1912, and to receive for such loan the promissory note and chattel mortgage to secure the same, executed and delivered to the plaintiff by the defendant.

The defendants further urge that even if the plaintiff was the owner of the stock there were involved in the arrangement made by her with the defendant Worthington at the time of the taking of the note and chattel mortgage two factors, each of which constituted a fraud upon the defendant's creditors, to wit, the plaintiff's compliance with his request that the chattel mortgage should not be filed, and the retention by him of possession of the collection of postage stamps, after the mortgage upon it was executed and delivered.

It is also claimed by these defendants that there was an oral arrangement made in parol between the

defendant Worthington and the plaintiff at the time of the giving of the note and mortgage in question, to the effect that while she was to have a mortgage upon the collection he was to retain the right to have for his own purposes therefrom such stamps as he might thereafter wish or desire; but this claim is not sustained by the evidence. Such use as the defendant Worthington made of the stamps for his own benefit after May 7, 1912, was without the knowledge or consent of the plaintiff.

The omission of a mortgagee to file a chattel mortgage executed in good faith as security for a *bona fide* debt is not necessarily evidence of fraud; nor is the retention of possession of the mortgaged property.

There is no proof that the defendant Worthington was insolvent in May, 1912, or was believed or known to be insolvent by the plaintiff either at that time, or when the first deliveries of the stamps were made to her by the defendant in 1914. The loan of the plaintiff's Chicle stock which was made in good faith and pledged to one of the banks as additional security in the course of defendant's financial transactions occurred more than three years prior to the time when the defendant Worthington made his assignment for the benefit of creditors to the defendant McGraw. He was then engaged in a large enterprise, the organization and building of a railroad called the Interurban Railway and Terminal Company of Cincinnati, to assist which the banks were loaning him large sums of money. There was no fraud or fraudulent intent as far as the plaintiff was concerned in withholding from record at the request of the defendant the chattel mortgage given to the plaintiff covering the Worthington collection of stamps, so that injury would not be done to his credit in the circumstances.

The nature of the mortgaged property was peculiar, being a collection of canceled postage stamps, which the defendant had been collecting since the year 1884, and which had a value as a curiosity or historical exhibit, but not as an article of merchandise that was being dealt in in the business world, or as a dividend paying security. The defendant testifies that he had never thought of being able to use the collection as collateral to his loans with financial institutions. Prior to May 7, 1912, the stamps had never been used by him anywhere as collateral security for a loan, nor were they adaptable for such purpose. It does not appear that they had ever been included by him in any statement of his assets, upon which he had sought or obtained credit in his financial transactions. He required the use of bankable collateral on May 7, 1912, and the plaintiff, believing in its value, was willing to accept the collection as security in return for placing at the defendant's disposal the shares of Chicle stock, which had a distinct market value on that day and was available as collateral security at the banks. The Citizens Savings and Trust Company of Cleveland has had the benefit of the application of the value of this Chicle stock on the defendant Worthington's indebtedness. At the time the stock was loaned by the plaintiff it was expected that its use by the defendant would be temporary, as the railroad enterprise employing the funds at his command would soon be sold, and the Chicle stock released and returned to the plaintiff. It is not unnatural that the plaintiff, a woman, and a friend of the defendant and his family, should have permitted this peculiar pledge to remain in the defendant Worthington's possession for a time after it was pledged to her as security for the payment of the note. At the time of the giving of the note he

informed her that he was continually adding to the collection, that he had some stamps at that time that were to be arranged and placed in albums, and that as soon as the stamps were properly arranged he would send them to her. She was therefore expecting the delivery of the stamps from the time the Chicle stock was loaned; but after the defendant's failure to pay the note at maturity the plaintiff insisted upon the immediate possession of the stamps, and possession therefore was given to her by deliveries made from time to time as above stated, before the general assignment was executed by the defendant Worthington to the defendant McGraw for the benefit of Worthington's creditors on September 27, 1915. In the circumstances proved, there is no evidence of any fraud or fraudulent intent on the part of the plaintiff in failing either to file the chattel mortgage, or in permitting the defendant Worthington to retain possession of the stamps. No strange or suspicious circumstance has been proved from which such fraudulent intent can be inferred. Under the promise made to her, the plaintiff was willing to leave the collection in the hands of the expert collector who had assembled, was completing and constantly adding to its value, and keeping it safely in a vault especially arranged for the purpose. In the latter part of June, 1914, when the defendant Worthington had defaulted in the payment of his note and the plaintiff became aware that needing funds he undertook to make some sales of the stamps, and to use some of them as collateral, without the knowledge or consent of the plaintiff, she insisted upon possession of the stamps without further delay, and the defendant began delivering them to her.

It is the settled law of the state of New York that an unfiled chattel mortgage is valid between the par-

ties, and cannot be attacked by creditors or the assignee for creditors, until they have executions or attachments, or other process of the court under which they can make a levy. *Sheldon* v. *Wickham,* 161 N. Y. 500.

Judge Haight, in writing the opinion of the court in that case, says (p. 503) : " It has been repeatedly held that such a mortgage is only void as to the persons mentioned in the statute, to wit, purchasers in good faith, and creditors who are armed with some legal process authorizing a seizure of the property, and that it is valid as to the mortgagor and all other persons. The mortgagor, in assigning his property to the defendant Hillis, could not transfer to him any greater right with reference to this property than he theretofore possessed, and if the mortgage was valid as to him, it followed that it was valid as to his assignee. This was expressly held in this court as early as the case of *Van Heusen* v. *Radcliff* (17 N. Y. 580), and the same principle has been since repeatedly asserted in numerous cases. This was the unquestioned condition of the law down to the time of the enactment of chapter 314 of the Laws of 1858. This legislation gave to an executor, administrator, receiver, assignee or other trustee the right to disaffirm, treat as void and resist all acts done, transfers and agreements made in fraud of the rights of any creditor, etc. This statute, with some amendments not material to be now considered, has been incorporated in the Personal Property Law of 1897. It invested assignees with a power which they did not theretofore possess. They were permitted, as the representatives of general creditors, to disaffirm and treat as void, transfers and agreements made in fraud of the rights of creditors, without having such claims established by a judgment.

But it will be observed that no mention is made in this statute with reference to unfiled chattel mortgages. Unless, therefore, they can be treated as transfers of property in fraud of the rights of creditors, this statute does not effect a change in the law so far as the question under consideration is concerned.''

And even though the defendants were or represented judgment creditors armed with process, and ready to make a levy, they would have no right to levy upon any stamps which the mortgagor had voluntarily delivered to the plaintiff to secure or pay her debt. *Stephens* v. *Perrine,* 143 N. Y. 476.

The fact that the law of the state of Ohio permits an assignee for the benefit of creditors to contest the right of a chattel mortgagee under an unfiled chattel mortgage, in direct contradiction to the law of the state of New York, is ineffective in this case for the reason that the forum is in the state of New York and not in the state of Ohio. The defendants, having submitted themselves to the jurisdiction of a New York court, are governed by the New York law as to remedies. *Union Nat. Bank* v. *Chapman,* 169 N. Y. 538; *Hixson* v. *Rodbourn,* 67 App. Div. 424.

The statutes of the two states as to the filing of chattel mortgages, and the right of creditors to take advantage of the non-filing thereof being the same, the means by which the creditor takes advantage of the non-filing relates to the remedy and is governed by the *lex fori.* In order to take advantage of the non-filing of the mortgage the defendants must arm themselves with legal process in this state in a suit against the defendant Worthington, as a preliminary to asserting their rights. Having failed to do so they have not complied with the law of the state in regard to the remedy, and cannot be heard. *Dearing* v. *McKinnon Dash & Hardware Co.,* 165 N. Y. 78.

The note, and the chattel mortgage given as collateral security to it, represent transactions entered into in perfect good faith by parties competent to enter into them; and therefore the note evidences a debt by the defendant Worthington to the plaintiff, and the chattel mortgage evidences his promise to secure the payment of that debt by giving the plaintiff a lien upon his collection of postage stamps. Although the chattel mortgage was not filed at the time, in accordance with the laws of Ohio, such fact does not take from it its potency as evidence of the transaction actually entered into at the time. It clearly evidences the defendant Worthington's promise to give the plaintiff a lien upon the collection of postage stamps as security for the payment of the amount of the promissory note if he did not return the borrowed stock.

It is undisputed that the Citizens Savings and Trust Company of Cleveland has had the benefit of the plaintiff's stock, and ultimately caused that stock to be transferred to itself upon the books of the Chicle Company, thus legally depriving the plaintiff of the stock, or of any right to retain it, since she had no contract relations whatever with that bank. Before any other creditor legally questioned the transaction between the plaintiff and the defendant Worthington, as appears by the undisputed evidence, the defendant delivered the postage stamps to the plaintiff; most of them prior to May, 1915; and on May 20, 1915, he wrote a letter to Mr. Colson, the selling agent in Boston, to recognize the plaintiff as the owner of the stamps in his possession, and to account to her therefor. The plaintiff wrote a similar letter to Mr. Colson in June, 1915, and from that time Mr. Colson recognized the plaintiff as the person entitled to the possession of the stamps that had been sent to him, or to the proceeds of such sales

as he should make therefrom. It is true that Mr. Colson had advanced a sum of money to the defendant Worthington upon the stamps before he was informed as to the lien possessed by the plaintiff upon them, and that he afterwards reimbursed himself for those advances from sales that he made. But what Mr. Colson did in this regard before he was directed to treat the plaintiff as the person entitled to the possession of the stamps can in no way affect her rights, nor can what he did without her express assent as between himself and the defendant Worthington affect the rights of the plaintiff, as the defendant Worthington's creditor. The other creditors of the defendant Worthton having failed to legally question the transaction between him and the plaintiff by any action or proceedings previous to the general assignment to the committee on July 30, 1915, or to the defendant McGraw under the Ohio statute on September 27, 1915, at which time the plaintiff was in complete possession of the collection of stamps, through their voluntary delivery by the defendant Worthington, neither the defendant, as assignee, nor any other creditor, or representative of a creditor, of the defendant Worthington, can now and here question the validity of the plaintiff's claim to a prior lien upon the collection.

Whether this security was held under a mortgage, or by way of a pledge, is unimportant. The vital fact is that at the time the transaction was entered into the party parting with her property did so upon the faith of a promise by the other party that she should have a lien upon specific property as security for what she parted with. If we regard the mortgage as void under the laws of the state of Ohio, it is nevertheless evidence of the transaction entered into, and of the promise made, and of the security pledged. If we regard the

mortgage as merely voidable in the circumstances it is nevertheless true that it has never been legally avoided by any creditor, or the representative of any creditor, and the plaintiff having obtained possession of the property promised as security thereunder before the mortgage has been avoided by any creditor, or the representative of any creditor, and such possession having been obtained by the plaintiff with the consent of the defendant Worthington, who executed the mortgage, it follows within the chattel mortgage cases in the state of New York and within the decision of the United States Supreme Court (*Sexton* v. *Kessler,* 225 U. S. 290) that the plaintiff can hold that possession as against the world, whether we regard the possession as founded upon a chattel mortgage voidable, but not void; or whether we regard the possession as due to a pledge, because the chattel mortgage was rendered void by statute. The defendant Worthington was willing to make the promise good by pledging the collection of stamps to the plaintiff. In *Stephens* v. *Perrine, supra,* the court by Judge Peckham says: " If, before any lien had been acquired by the creditors, the mortgagors had delivered the property to the mortgagee in payment of her debt, she could have then held it because it would have been in such a case a transfer of property by them in payment of their debt, and although it would have been in fact preferring such debt, yet it would have been a preference which the mortgagors then had the right to make." See, also, *Tremaine* v. *Mortimer,* 128 N. Y. 1; *Bowdich* v. *Page,* 153 id. 104.

The pledge and transfer of the collection to the plaintiff would not be invalidated under the Assignment Law of Ohio, sections 11104 and 11105, assuming that this law applies to the case at bar, for the reason

that they were made in payment of a *bona fide* debt, which had no relation to a contemplated insolvency of the defendant Worthington, or a design to prefer the plaintiff as a creditor, to the exclusion of other creditors, in so far as the plaintiff had knowledge of the circumstances. *Hunt* v. *Bode,* 66 Ohio St. 255. But this statute of Ohio is in opposition to the common law and to the law of the state of New York, and is not extraterritorial Where the act done is valid in the state where the parties are, and where the personal property is, it must be held to be valid in the courts of that state, and also by interstate comity in the courts of the other states.

Moreover, the defendants who are contesting the plaintiff's claim, having taken an assignment of the stamps expressly subject to the plaintiff's lien, cannot now dispute the validity of it. It appears that the first assignment made to the committee under the agreement of July 30, 1915, was made subject to whatever lien there might be on the collection upon the part of Alice F. Halladay, and the assignment thereafter made to the defendant McGraw as assignee, pursuant to the laws of the state of Ohio, was also made expressly subject to Alice F. Halladay's lien.

The defendant Worthington undertook to assign and the other defendants undertook to take only subject to this lien; and taking subject to the lien they could not and cannot dispute the validity of the lien. *Hartley* v. *Harrison,* 24 N. Y. 170; *Cottle* v. *County of Erie,* 57 App. Div. 443.

It appears that $25,000 worth of stamps were added to the collection after the mortgage was given to the plaintiff, and the defendants claim that these stamps are in no way subject to any lien or claim on the part of the plaintiff, and that as they are so mixed with the

other stamps as to be impossible of identification the defendant McGraw as assignee has an equitable lien on the entire stamp collection to the extent of $25,000. It is presumable that some of the stamps purchased by the defendant Worthington subsequently to the mortgage came into the possession of the plaintiff when she got the albums between September 28, 1914, and June 28, 1915; but these subsequently purchased stamps and the stamps covered by the chattel mortgage are alike subject to her lien, because her lien depends upon a voluntary delivery by the defendant Worthington to her, and not upon the chattel mortgage. It is therefore unimportant whether they are or are not covered by the chattel mortgage. The stamps delivered to Mr. Colson which have come into the hands of the plaintiff, and the stamps purchased prior to June 28, 1915, which have come into the possession of the plaintiff, were delivered under the pledge evidenced, as hereinbefore set forth, by the giving of the chattel mortgage. Any stamps purchased since the 28th day of June, 1913, have not come into the possession of the plaintiff, and are therefore not involved in the consideration of the question presented. No distinction should be drawn between the $25,000 worth of subsequently acquired stamps which were delivered to the plaintiff prior to June 28, 1915, and all the rest of the collection. The defendants have an equitable lien subsequent to the plaintiff's lien on all of the stamps left after her claim has been satisfied by their sale, and upon all surplus moneys acquired from their sale.

It follows from the discussion of the facts and the law applicable to this case that the plaintiff is entitled to a judgment against the defendant Worthington in the sum of $337,500, less the sum of $25,500 paid thereon, with interest on all sums unpaid from May 6,

1915, and the costs of this action; and that the judgment shall provide for a first lien upon all of the stamps belonging to the defendant Worthington which are in the possession of the plaintiff, being the entire Worthington stamp collection; and that said stamps shall be sold by the plaintiff in accordance with the rules of law and practice of this court in the case of a foreclosure of chattel mortgages or pledges; and that such sale be public, and to the highest bidder, after giving the notice as required by law of the time and place of said sale; and that the plaintiff shall have a deficiency judgment for the amount still owing against the defendant Worthington in the event that enough is not realized from such sale to pay the plaintiff's claim, with interest, costs, and the expense of the sale.

Judgment accordingly.