FRANK A. HALLADAY, as Executor, etc., of ALICE F. HALLADAY, Deceased, Plaintiff, *v.* HARRISON B. McGRAW, as Assignee for the Benefit of Creditors of GEORGE H. WORTHINGTON, Defendant.

Supreme Court, Erie Special Term, December, 1921.

*Pledge — chattel mortgage on rare postage stamps — sale by pledgor under contract — distribution of proceeds and value of unsold stamps.*

ACTION in equity to determine the respective interests of the parties in a fund on deposit.

*Wallace Thayer,* for plaintiff.

*Daniel J. Kenefick,* for defendant.

SEARS, J. The controversy between the parties has had a long judicial history. 99 Misc. Rep. 141; 106 id. 661; 190 App. Div. 929; 231 N. Y. 382. This particular action has already been to the Court of Appeals where the principles upon which it must be decided have been laid down, and the matters still remaining in dispute are now, as that court said, within comparatively narrow compass. In view of the previous opinions, it is not necessary to recite the facts at length. The judgment heretofore granted in this case was entirely reversed by the Court of Appeals so far as the matters in controversy between Halladay as executor, and McGraw as assignee, are concerned, and a new trial has been ordered. Under such circumstances, the parties are entitled to the untrammelled judgment of the trial court on all questions of fact. *Gugel v. Hiscox,* 216 N. Y. 145; *Ga Nun v. Palmer,* Id. 603.

The litigation formerly involved in this action between the defendant Colson and the plaintiff has been settled out of court, and the only questions now remaining relate to the distribution of the trust fund.

This fund consisting of $101,310.41 was made up of three component parts, and it will be convenient to consider each part separately:

(1) The item of $14,442 is most easily disposed of. The plaintiff has presented no new evidence changing the situation in respect to this item from that presented on the former trial, and this item belongs entirely to the defendant.

(2) The item of $31,868.41 is referred to in the contract, which is the basis of this action, as follows: " The party of the second part (McGraw) claims that at least the amount received by Colson, aggregating $31,868.41, as the proceeds of sales of stamps made by him at private sale since the entry of judgment should be applied at this time on the reduction of the claim of party of the first part (Halladay), as set forth in the judgment, while the contention of party of the first part that Colson is entitled to be paid his commissions amounting to $7,995.26 on such sales, and that the party of the second part should look to Colson for the payment of the balance of the proceeds of Colson's sales, amounting to at least $23,873.15."

In preparing the contract, the amount of $31,868.41 was arrived at by taking the balance shown to be due from Colson to Mrs. Halladay, according to his statement of May 26, 1917, $28,873.15, deducting therefrom $5,000 which Colson paid Mrs. Halladay on June 18, 1917, and adding to the difference the sum of $7,995.26 which was a twenty per cent commission claimed by Colson on all sales, whether completed or not, which had been made by him since the rendition of the judgment of February 16, 1917.

Upon the evidence presented upon this trial, I find that Colson's commissions on sales made subsequent to the rendition of such judgment, and before the making of the contract, had not been paid at the time the contract was entered into. Colson had furnished to Mrs. Halladay a statement in which his commissions had been charged to her, and credited to himself, but the balance due Mrs. Halladay, according to that statement, was $28,873.15, of which, as above stated, $5,000 was later paid Mrs. Halladay by Colson. If the balance due from Colson to Mrs. Halladay, at the date of the contract, is taken to be $23,873.15, then and only then could I find that his commissions had been fully paid, and in that event they must be considered paid not only on all completed sales, but also on sales on which there were outstanding accounts receivable, for in all his accounts to and including that of May 26, 1917, Colson had credited Mrs. Halladay with the amount not only of collected but also uncollected items, and similarly charged her with commissions on all such sales.

But this is, perhaps, beside the mark. Colson is no longer a party to this proceeding. The question before the court as to the item of $31,868.41 relates to how much should be allowed McGraw as assignee as a payment on the chattel mortgage indebtedness, because of Mrs. Halladay's inability to return to McGraw, at the time of his redemption of the mortgaged articles, those stamps which she had theretofore had Colson sell for her at private sale. McGraw never consented to these private sales,

and if the disposition of the stamps at private sale after the rendition of the judgment of foreclosure be considered a conversion, as the Court of Appeals seems to indicate in its opinion, the plaintiff must credit the defendant with the market value of the stamps sold, unless Mrs. Halladay actually received more than the market value, in which case the plaintiff must credit the amount Mrs. Halladay actually received.

The chattels involved are without value as articles of use. The only purchasers for such stamps as are principally involved are wealthy enthusiasts who make the collection of stamps a hobby, and those who cater to such whims. If put up for sale at auction, or passed over the counter at a stamp vendor's shop, they probably would have brought very little, or remained unsold. Colson was able to dispose of the articles through his personal acquaintance with the few possible purchasers, the use of his personal reputation as an expert, and his personal salesmanship. For his services, by which greatly more than the market value was secured by him, he fairly earned the twenty per cent commissions (including therein all his expenses), which had been agreed upon between Colson and the original mortgagor, and approved by Mrs. Halladay. Mrs. Halladay actually received, or was to receive, the amount of Colson's sales less twenty per cent, while the market value by no means exceeded the net sum which Mrs. Halladay received, or was entitled to receive under the arrangement with Colson.

I conclude, therefore, that the plaintiff should receive of the second item $7,995.26, and the defendant $23,873.15.

(3) As to the third item of $55,000 further facts are found. This sum was stated in the contract to be the *estimated* value of stamps still in the possession of Colson at the time of the making of the contract. Mrs. Halladay, undoubtedly, consented to the deposit of this amount of the total indebtedness found due her by the original judgment of foreclosure, in order to assure herself of full payment when Colson returned to her the stamps, and she, in turn, delivered them to their owner, McGraw, while the defendant consented to the deposit of this sum, in order to insure the return of all unsold stamps, together with the fair market value of all stamps not otherwise accounted for, which Mrs. Halladay might not be able to return.

The evidence convinces me that the estimate of $55,000 as the value of the remaining stamps was not accurate. Their value then and now is the same. I find that the value of the stamps deposited in the clerk's office, and to be returned to McGraw as a result of the judgment in this action was $20,000. The fair market value of the stamps sold by Colson, and not otherwise accounted for either in the original judgment, or up to the date of the contract

(exclusive of the Transvaal stamps) did not exceed $11,473.60, this figure being eighty per cent of the gross amount for which Colson sold the stamps, and eighty per cent being taken as the maximum of the possible market value, for the reasons hereinbefore stated. The Transvaal stamps were sold by Colson for an aggregate sum of $21,221.25, from which he was entitled to retain, to re-pay his loan, interest and expenses, $15,753.24, but no commissions (except $1,500 for sales after the collection was redeemed by Mrs. Halladay), as this transaction did not fall under the general contract, and a balance of $3,968.01 as a result of the Transvaal stamp transaction remains chargeable to the plaintiff, and must be credited on the mortgage indebtedness.

In addition to these items, there is $1,000 which was concededly paid by Colson to Mrs. Halladay before the rendition of the foreclosure judgment, but was not included in its provisions, which the parties have stipulated may be taken into account in this action, and likewise on the other side of the account is an error in the calculation of interest as inserted in the contract, amounting to $463.85.

To resume, of the $55,000 item, McGraw as assignee is, therefore, entitled to the following:

| | |
|---|---:|
| Market value of stamps sold and not otherwise accounted for, exclusive of the Transvaal items.. | $11,473 60 |
| Transvaal items................................. | 3,968 01 |
| Remittance from Colson to Mrs. Halladay previous to foreclosure judgment......................... | 1,000 00 |
| | $16,441 61 |
| Less an error in the computation of interest......... | 463 85 |
| | $15,977 76 |
| Amount of third item belonging to defendant....... | 15,977 76 |
| Amount of third item belonging to plaintiff......... | 39,022 24 |

Of the entire trust fund, $54,292.91 belongs to the defendant, and $47,017.50 to the plaintiff. Bank interest, if any, should be proportionately divided except that interest on $20,000 of plaintiff's share should go to defendant because of delay to defendant in obtaining possession of his stamps.

Let a decision be presented in accordance herewith, directing judgment for division of the trust fund as indicated, the defendant to be entitled to all stamps now in the hands of the county clerk, with a bill of costs to the plaintiff.

Judgment accordingly.