JOSEPH MILLER and MARGARET MILLER, Plaintiffs, *v.* HARRY L. KATZ, MILTON I. JACOBI, ARNOLD JACOBY and MINNIE I. GROSSWIRTH, Defendants.

City Court of New York, Kings County, April 11, 1932.

*Fred M. Wolf,* for the plaintiffs.

*Conrad H. Ratner,* for the defendants Katz and Jacobi and Jacoby.

GEISMAR, J.   This is a motion for a new trial made some time after the close of the trial but during and before the expiration of the term.   This was the second trial, the previous trial having resulted in a judgment for plaintiffs which was affirmed on appeal to the Appellate Term and subsequently reversed on appeal to the Appellate Division, a written memorandum having been filed with such reversal.   Intermediate the close of the second trial and the making of this motion, a second memorandum commenting upon the first memorandum was written and filed in the Appellate Division upon plaintiffs' motion asking the court to " Make a ruling or issue a memorandum, or otherwise indicate its intention as to the discontinuance against Grosswirth " and to amend its decision to that extent.   There is nothing in the papers to show that plaintiffs' attorney on the motion before the Appellate Division apprised said court that a second trial had already been held in which the trial court had construed the memorandum of the appellate court as indicating a reversal upon which the new trial should proceed *de novo,* as is the general rule.   This motion is now made upon such aid, comfort and justification as learned counsel for plaintiffs reads in such second memorandum.   The action is laid in the County Court of Kings county and four defendants were named and served as principals sought to be held for the acts of their agent.

1. The ruling of the trial court that the second trial was to be conducted *de novo* was correct.   The general rule is given in *Gugel* v. *Hiscox* (216 N. Y. 145, 152), which says: " ' For the purposes of the succeeding trial, the case was to be presented *de novo,* as though it had never been heard before.' (Citing *Sticht* v. *Buffalo Cereal Co.,* 195 N. Y. 70, 75.) * * *.   The learned trial justice was not only free to pass upon the facts without becoming chargeable with disrespect or disobedience to the higher court, but he was bound to form his own conclusions thereon, notwithstanding vigor-

ous expressions of opinion by that court. In cases where differing conclusions may be drawn by different triers of fact, it is imperative that the responsible trier of fact should not abdicate his functions." This rule is restated tersely in *New York Dock Co.* v. *Flinn-O'Rourke Co.* (121 Misc. 155, 157) as follows: " The present trial is, therefore, a trial *de novo*, and nothing that was done or decided on the former trial has any binding force." (*Ga Nun* v. *Palmer*, 216 N. Y. 603; *Halladay* v. *McGraw*, 118 Misc. 843.) A limited retrial is never a matter of right, but always a privilege and the grant of the privilege as well as the right thereto should clearly be readable in and established out of the directions of the appellate court. (*Arnold* v. *Arnold*, 230 App. Div. 79, 80; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 176 N. Y. 308; *Wilson* v. *Mechanical Orguinette Co.*, 170 id. 542.)

2. There is failure of proof of that degree of conclusiveness which the law requires of the residence within the territorial limits of Kings county of three out of the four defendants. The law is settled that the issue of residence can be properly raised by general appearance and answer tendering such issue by means of a denial therein. (*Levine* v. *Borden's Condensed Milk Co.*, 179 App. Div. 921; *People* v. *Bailey*, 136 id. 130, as compared with *Gardner* v. *Condon*, 117 Misc. 97, 98; *Bunker* v. *Langs*, 76 Hun, 543; *Meyers* v. *American Locomotive Works*, 201 N. Y. 163.) There is a holding in *Klein* v. *Director General of Railroads* (180 N. Y. Supp. 618) that jurisdiction of the person may be conferred by consent but this is contrary to the general trend of opinion. While also it has been held that the silence of the defendant confers jurisdicion and is to be construed as a waiver, it has likewise been held that the question is never and cannot be waived and may be raised for the first time on appeal. (See the strong dissent in *Weidman* v. *Sibley*, 16 App. Div. 616; *Burckle* v. *Eckhart*, 3 N. Y. 133; *Dakin* v. *Elmore*, 68 Misc. 423, 425.) In the instant case it is conceded that defendant Grosswirth is a non-resident. As to the defendants Jacobi and Jacoby, plaintiffs proved only that they were temporary residents of Kings county, while both these defendants proved categorically that their permanent residence is outside of Kings county, in Baryville, N. Y. There they live, pay taxes, vote and there one of them was a candidate for public office. If now a person is to be adjudged a resident because he is a temporary resident, we are again at sixes and sevens with regard to this constitutional provision. The length of time of the temporary residence except in cases of actual or established fraud can have nothing to do with the decision. Whether a temporary visitor to Kings county is there for a day or a year can make no difference as to his status as a temporary visitor. If this

were not true, then the host of non-resident commuters who come every day to New York city to do business could be held to be residents of New York county. The doing of business within the county has been held not to be such residence as to satisfy this constitutional provision. (*Meyers* v. *American Locomotive Works, supra.*) There is then failure of proof here as to the required jurisdictional fact of residence. (*Cunneen* v. *Kennedy,* 170 App. Div. 908; *Kortwellyeszy* v. *Manhattan Cooperage Co.,* 162 id. 285.)

3. It was established in the trial that plaintiffs well knew that the four defendants constituted a partnership, jointly and severally liable; that the defendants never attempted to conceal the fact, indeed had given timely information of it to plaintiffs' attorney; that acting on such information, plaintiffs had named and served as defendants all persons constituting the partnership; that they all had appeared and answered; and that throughout both trials, both sides acquiesced in and tried the cause upon the fact of an existing partnership. It is true that the allegations of the complaint nowhere contain the word " partnership " and might offer subject for debate on account of this omission. However, no trial is conducted merely *secundum allegata* especially if there be either latent or patent ambiguity in such allegations. The trial must be conducted *secundum allegata et probata,* and if there be any contradiction or conflict, it is the proof which is decisive and not the allegations. It follows that the plaintiff must be held to the rules regulating the procedure in suing a copartnership. These rules are well established. He may start the action by service of only one or of any number fewer than all of the partners. (Civ. Prac. Act, §§ 475, 1197.) But once having named and served all the partners, he may not, over objection, discontinue as to any one or more of them. (*Dean* v. *Whiton,* 16 Hun, 203; *Kortwellyeszsy* v. *Manhattan Cooperage Co., supra.*) (See, also, discussion and cases cited in 38 McKinney's Statutes, Partnership, p. 35, § 26, on Parties to Actions.) The case relied on by learned counsel for plaintiffs, namely,. *Woodhouse* v. *Duncan* (106 N. Y. 527), instead of supporting his view, specifically upholds the view here enunciated. It says that in order to nonsuit a plaintiff it is not sufficient to show that " the plaintiffs may have known that the three persons named had some sort of interest in the adventure, but they must have known that they were members of a firm with the defendants, or that they were joint contractors with them." Translated from its form of negative statement to an affirmative form, this means that if plaintiffs knew the identity of the joint contractors, they were under the necessity of joining them. There can be no question in the instant case but that plaintiffs had complete and timely knowledge of the

identity of all the copartners and indeed plaintiffs named and served them all as defendants. A permission to discontinue here as to one of the partners duly served imperils cont..bution (*Dean* v. *Whiton, supra*), and it has been repeatedly held that even though discontinuance be generally a matter of right, it will not be granted where " substantial rights of other parties have accrued, and injustice will be done to them by permitting the discontinuance." (*Matter of Butler*, 101 N. Y. 307, 309; *Gentilala* v. *Fay Taxicabs, Inc.*, 243 id. 397, 399.) Restated briefly, the rule of procedure with respect to actions against a partnership is that a plaintiff may name as defendants one or more than one or all whom he believes to be the constituent personalities of a partnership, but he is under no obligation to serve more than one; plaintiff may then discontinue as against all not served and as against those served who are found not to be jointly and severally liable, unless of course in the interval proper parties defendant move for joinder; but having served more than one or all, he cannot discontinue as against any one served over objection established that the rights of the remaining defendants are endangered. (*Shanley* v. *Merchant*, 140 App. Div. 797.) The ruling of the trial court upon the motion to discontinue was, therefore, correct.

4. The view expressed in the second and subsequent memorandum of the learned Appellate Division had already been expressed, followed and applied by the trial court in this antecedent and second trial. The court said at the end of plaintiff's case: " Now what is the proof that you may continue the action against the three defendants? Where is the proof and what is it? " Learned counsel for plaintiffs answered: " The proof is the admission made in the answer of all four defendants." It is hardly necessary to point out further that this admission is not an admission that three are liable, but an admission that four are liable, and plaintiffs cannot assume the right to adopt out of an admission or tear out of its context the excerpt which suits their purposes, however antagonistic to the purport of the whole admission such excerpt may be.

5. The order for dismissal of the complaint was asked for and obtained by plaintiffs themselves, and I do not think it should lightly be set aside on the mere plea of moving counsel that he has completely bogged himself, there having been no fraud, deception, mutual mistake or the like. The record of the trial shows that plaintiffs' counsel said: " I am not properly in court, so I will take a dismissal." Again, he moved in the following words: " I am out of court by lack of jurisdictional basis and I will ask your honor to pass on that to dismiss or nonsuit me so that I may bring the action in a proper court and try the action

on the merits." There are cases in which the court has come to the rescue of parties but only where such parties have been deceived or put to a disadvantage because of mutual mistake or deception whether by acts of omission or commission on the part of adversaries. In *People* v. *Bailey* (136 App. Div. 130) it is said, " a question of practice may be waived, and a suitor by his laches may put himself in a position where he cannot take advantage of a mistake in the practice of his adversary." (*Bunker* v. *Langs*, 76 Hun, 543; *Henneke* v. *Schmidt*, 121 App. Div. 516.) But where, as in the instant case, a party is ensnarled and enmeshed by his own fault exclusively, there is no legal authority for judicial expansion of the meshes, so that he may be released from the entanglement, especially against an objection showing the harm done and that would further be done to the opposing party. The comments of the learned trial justice on the first trial are here pertinent and instructive. (Case on Appeal, fols. 212, 219.) The motion is denied. Order signed.