## WARTH et al. v. HERMAN.

(Supreme Court, Appellate Division, Second Department.   May 26, 1911.)

Argued before JENKS, P. J., and HIRSCHBERG, BURR, and WOOD-WARD, JJ.

---

CENTRAL TRUST CO. OF NEW YORK v. MANHATTAN TRUST CO. et al.

(Supreme Court, Appellate Division, First Department.   May 19, 1911.)

1. DAMAGES (§ 6*)—FOLLOWING TRUST FUNDS—EVIDENCE.
    While plaintiff suing in equity for the value of corporate stock and bonds, converted by defendant, has the burden of proving the loss sustained by defendant's acts, the court will seek by such evidence as is applicable to ascertain as nearly as possible the amount of damages suffered, and will resort to some practicable means to ascertain the damages, though the ordinary methods of proof are unavailable.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 5;  Dec. Dig. § 6.*]

2. DAMAGES (§ 6*)—CONSTRUCTIVE TRUST—ENFORCEMENT—EVIDENCE.
    A defendant, with knowledge of plaintiff's claim of a prior lien on corporate stock and bonds, sold the same at auction.   The securities were bid in by one liable on notes intended to be secured by the pledge of the securities to defendant, and the notes were turned in instead of cash for a part of the price with the assent of defendant.   Subsequently plaintiff obtained a judgment establishing his prior lien.   There was no market value of the stock and bonds at the time of the sale at auction and no actual value ever attached to them.   *Held*, that plaintiff could recover the amount of the bid at the sale; defendant becoming a trustee de son tort for the benefit of plaintiff.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 5;  Dec. Dig. § 6.*]

3. APPEAL AND ERROR (§ 1122*)—DISPOSITION OF CASE ON APPEAL—FINDINGS OF FACT.
    The Appellate Division on appeal may not make findings of fact nor assess in the first instance damages on conflicting evidence.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420;  Dec. Dig. § 1122.*]

4. APPEAL AND ERROR (§ 1122*)—DISPOSITION OF CASE ON APPEAL—FINDINGS OF FACT.
    Where the evidence is not conflicting, and the undisputed facts are embraced in the findings of the referee, the Appellate Division may award damages based on a calculation from the admitted facts.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420;  Dec. Dig. § 1122.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. COSTS (§ 164*)—EXTRA ALLOWANCE.**

Under Code Civ. Proc. § 3253, authorizing additional allowance not in excess of a specified per cent. of the sum recovered, a plaintiff suing in equity and obtaining a substantial recovery is entitled to an additional allowance where the case was difficult and extraordinary.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*]

Appeal from Judgment on Report of Referee.

Action by the Central Trust Company of New York, as trustee, against the Manhattan Trust Company and others. From a judgment for defendant named and from an order denying an extra allowance, plaintiff appeals. Judgment modified and affirmed, and order denying extra allowance reversed, and motion granted.

See, also, 109 App. Div. 517, 96 N. Y. Supp. 519.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

William D. Guthrie, for appellant.
Alfred B. Thacher, for respondent.

SCOTT, J. This action, which has now been at issue for many years, involves primarily the conflicting claims of plaintiff, as trustee, and the defendant Manhattan Trust Company to certain securities pledged with both by the West India Improvement Company. The principal issue, as to the right to the possession of the securities, having finally been determined in plaintiff's favor, there remains only to be considered the amount of damages, if any, to which plaintiff is entitled, for having been kept out of possession. Incidentally there is also the question whether or not plaintiff is entitled to an extra allowance.

In order to adequately comprehend the questions involved in this appeal, it is necessary to refer, as briefly as possible, to the facts found by this referee. On August 29, 1889, the West India Improvement Company succeeded to all the rights and took the place of one Frederick Wesson, and his associates under an agreement between said Wesson and the government of the British Colony of Jamaica, embodied in a law passed by the Governor and Legislative Council of said Colony, known as the "Jamaica Railway Company's Law 1889." The West India Improvement Company thereby became the "promoter" under said law, and, as such, undertook to buy an existing government railway in the Island of Jamaica and to build and equip certain extensions thereto, and to transfer both the existing railway and the extensions to a Jamaica corporation to be known as "Jamaica Railway Company." The Improvement Company was to pay to the Jamaica government for the existing railway a sum in cash and £700,-000, out of a total issue of £800,000 of the second mortgage bonds of the proposed Jamaica Railway Company. It was to receive in return for the cash payment, and for its efforts as "promoter," the four following items of property, viz.: (1) The remaining £100,000 of second mortgage bonds, which were to be held, however, by the Ja-

maica government, as security for the performance of the "promot-er's" undertaking, and were to be transferred to said promoter only upon the completion and acceptance of all the extensions and their equipment. (2) £30,000 of the first mortgage bonds of the new Jamaica Railway Company. These were to be issued to the Improvement Company only after the expiration of 12 months from the date of the completion and acceptance of the extensions, and then only in case they had not been sold within that time to defray the cost of repairs and replacements which the Improvement Company might be under obligation to make. (3) The entire issue of the common stock of the new Jamaica Railway Company, to be delivered in installments as the work progressed. (4) One square mile of land for every mile of extension completed, to be held free from taxation for a term of years.

The Improvement Company's right to the second mortgage bonds and to the stock was subject to forfeiture under certain conditions, which did not arise and need not be considered. The stock was also subject to repudiation by a decree of court upon a petition of the Jamaica government for the winding up of the Railway Company. Such a decree was actually entered on April 11, 1900.. The Improvement Company was to be reimbursed from time to time for the expense of building the extensions out of the proceeds of the first mortgage bonds of the new Railway Company. In order to raise money to start work, and to make the cash payment to the Jamaica government, the Improvement Company, on September 1, 1889, executed a mortgage to plaintiff, as trustee, to secure the payment of mortgage bonds to the amount of $1,000,000, which were duly issued and negotiated. This mortgage covered all of the rights of the Improvement Company under its agreement with Wesson, and the government of Jamaica, and all the property which it had acquired, or at any time in the future might acquire thereunder, including the right to receive, under the prescribed conditions, the £100,000 of second mortgage bonds, the £30,000 of first mortgage bonds, and the capital stock of the new Jamaica Railway Company. This mortgage also contained a clause forbidding the Improvement Company to sell, convey, or dispose of any of the property covered by said mortgage, "without the express written assent thereto of the trustee (the plaintiff herein) evidenced by said trustee joining in every such sale, conveyance or transfer." The Improvement Company proceeded with the work it had undertaken so far as to make the cash payment to the Jamaica government, and to complete the extensions it had agreed to build, and on August 26, 1896, it received from the Jamaica government the £100,000 of second mortgage bonds, and the final installment of the capital stock of the new Railway Company. In the meantime, however, it had become largely indebted to J. P. McDonald & Co., its contractors, and to meet, in part, these obligations, it executed notes to a large amount, and for their security agreed to assign, and did undertake to assign, to the Manhattan Trust Company all its interest in the £30,000 of first mortgage bonds, the £100,000 of second mortgage bonds, and the capital stock of the new Jamaica Railway Company,

being a part of the same property which it previously mortgaged to plaintiff. The Improvement Company, at the same time, or shortly after, delivered to the said Manhattan Trust Company certificates for 53,115 shares of the stock, and the £100,000 of second mortgage bonds. The pledge and transfer of the stock and bonds to the Manhattan Trust Company was not assented to by plaintiff, and was not known to it until December 16, 1896, when it at once asserted its right to the possession of said stock and bonds and made demand therefor upon the Improvement Company and the defendant Trust Company. The £30,000 of first mortgage bonds were never received by this plaintiff, nor the Improvement Company, nor the defendant Trust Company.

On January 8, 1897, plaintiff commenced this action to establish its superior claim to a lien upon the stock and bonds to compel the surrender to it of the shares of the stock and the second mortgage bonds. The cause proceeded to trial before a referee, who, on February 14, 1898, rendered a decision dismissing the complaint. Immediately afterwards, on March 1, 1898, before a judgment had been entered, the defendant Manhattan Trust Company sold at public auction for $200,000 the capital stock and second mortgage bonds which had been delivered to it, and whatever right the Improvement Company had or might have to receive the £30,000 of first mortgage bonds. The proceeds of this sale, after satisfying the costs and charges of the defendant Trust Company, were applied to the payment of the notes attempted to be secured by the pledge of the aforesaid securities. The judgment entered upon the referee's decision was reversed by the Court of Appeals, which upheld the plaintiff's prior claim to the second mortgage bonds, leaving the question of the priority of claim to the stock to be determined upon the new trial. Upon the second trial the referee has found that the defendant Trust Company did not acquire legal title either to the shares of stock or the second mortgage bonds delivered to it by the Improvement Company, and that plaintiff is entitled to have surrendered to it said stock and bonds, having the superior equitable lien thereon, and judgment has been entered to this effect. From this judgment the defendants have not appealed, and it must be considered as constituting, to this extent, the law of the case. The referee has also found that plaintiff is entitled to recover only nominal damages, and the case comes before us upon plaintiff's appeal from the judgment in so far as it awards only nominal judgment. Plaintiff also appeals from an order denying its motion for an extra allowance.

This brings us to the question involved in the present appeal. The action, although necessarily brought in equity, is in effect one for conversion; the subject of the conversion being the stock and bonds above enumerated. It is now finally settled that plaintiff is entitled to their possession, was so entitled when demand was made upon the defendant Trust Company in December, 1896 (109 App. Div. 518, 96 N. Y. Supp. 519), and has been so entitled upon every day in the interim. The defendant Trust Company, with full notice of plaintiff's claim, has disposed of the stock and bonds, which, even if they could now be

physically delivered, have become worthless. If the learned referee is right in holding that the plaintiff is not entitled to substantial damages, it will have succeeded after much labor, and doubtless much expense, in gaining a barren victory. The learned referee arrived at this conclusion, as appears from his opinion, because he was unable to find from the proofs either the value of the bonds when the action was commenced or their present value; hence he found himself unable to determine what the deterioration, if any, had been.

[1] He proceeds upon the ground, and quite rightly, that the burden rests upon the plaintiff to prove what loss it had sustained by reason of the defendant's acts; but this is not a case in which the plaintiff is required to prove its loss with precise exactitude. It is not to be lost sight of that the defendant Trust Company stands in the attitude of a wrongdoer who has refused to recognize what has now proved to have been the superior title and right of the plaintiff. Under these circumstances, the court will seek, by such evidence as is available, to ascertain, as nearly as possible, the amount of damages which plaintiff has suffered, and will not halt "because the situation is novel, and the ordinary methods of proving value are not available, but will resort to some practical means that will be just to both parties." Industrial & General Trust, Ltd., v. Tod, 180 N. Y. 215–231, 73 N. E. 7; O'Brien v. Home Benefit Society, 117 N. Y. 310–319, 22 N. E. 954; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205–211, 4 N. E. 264, 54 Am. Rep. 676; Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756.

[2] The plaintiff suggests various methods by which its damages may be estimated, and a great quantity of evidence was taken for the purpose of showing (1) the amount actually invested in the enterprise, and (2) the value of the completed railway and equipment; the claim being that, taking one or the other of these sums as a basis, it is possible to figure out the value of the stock and second mortgage bonds at the time this action was commenced. We are satisfied, however, that the referee was right in refusing to find that this evidence was sufficient to establish the actual value of the stock and bonds at any time. There undoubtedly are cases in which it is proper to consider such evidence on the question of value, where no better evidence is available; but this is not, in our opinion, such a case. The evidence might show what value the stock and bonds appeared to have in 1896; but it is not shown that there was any market for the securities, and the subsequent history of the railway shows that no such actual value ever attached. There is, however, in the case, evidence from which the amount of the plaintiff's damage can be estimated. As has already been said, it has now been established that plaintiff was entitled to possession and control of the pledged securities, and it matters little whether it was entitled to actual possession when it made its demand on the Trust Company in December, 1896, or when it commenced this action in January, 1897, or not until default in the payment of interest on the mortgages for which it was trustee. At all times its lien thereon was prior and superior to that of the defendant Trust

Company, and of this prior and superior lien said defendant had notice. In dealing with the securities, after such notice, it did so at its peril and with full knowledge that it might ultimately be called upon to account to the plaintiff, whose right to possession, whenever it became complete, remained a continuing right down to the very day of the final judgment. On March 1, 1898, the defendant Trust Company undertook to deal with the securities pledged to it, all of which were covered by plaintiff's prior mortgage, by selling them at auction for the sum of $200,000, thereby substituting that sum for the securities themselves. This sum must be taken as representing the value of the securities on the day of the sale, and the defendant surely can have no just cause of complaint if it be now held chargeable with the price received for the securities at a sale conducted by its order, at a time selected by itself. It is of no moment that the securities were sold in a single lot so that it cannot be determined how much was bid for the stock, how much for the second mortgage bonds, and how much for the chance of procuring first mortgage bonds. All of these securities were subject to plaintiff's prior lien, and the manner of their sale was of defendant's own choosing. Nor does it affect the price bid as an evidence of value that the securities were bid in by McDonald, who was liable upon the notes intended to be secured by the pledge of the securities to defendant Trust Company, or that notes were turned in, instead of cash, for a portion of the purchase price. All this was with defendant's assent, which by so assenting applied to the payment of the notes the securities which it had been warned were claimed by plaintiff. The case is precisely the same as if the defendant Trust Company had sold the securities for cash and had turned that cash over to the holders of the notes. As the plaintiff had the right at all times to possession of the securities, that right at once attached to the proceeds, when the defendant Trust Company had consummated the conversion of the securities by selling them. It then became a trustee de son tort for the benefit of plaintiff, if the latter ultimately succeeded, as it has done, in establishing its preferential right to the securities. From that moment the plaintiff became entitled, at the very least, to the price realized. Upon the undisputed evidence in the case, therefore, it becomes possible to estimate the plaintiff's damages at the sum of $200,000, with interest from March 1, 1898.

The question next presents itself whether we may modify the judgment by awarding these damages, or must remand the cause for a new trial.

[3] It is settled that we may not make findings of fact; but in this case it would not be necessary to do so, because all the facts upon which we base our decision are embraced in the findings of the referee. Nor can we, upon conflicting evidence, assess damages in the first instance.

[4] But the evidence upon which our decision rests is not conflicting, and the facts are undisputed and the amount of damages which, as we think, should be awarded, are not a matter of opinion, but of calculation based upon the admitted facts found by the referee. There

is present, therefore, in the report of the referee, a finding of every fact necessary to establish as a legal conclusion the liability of the defendant Trust Company for damages. Ross v. Caywood, 162 N. Y. 259, 56 N. E. 629; Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501. Under these circumstances, a new trial would be an idle ceremony.

[5] The order denying plaintiff's motion for an extra allowance recites that the motion was denied "solely upon the ground that there is no basis upon which an allowance can be founded, and not in the exercise of the discretion vested in the court in such cases." The case on appeal contains the requisite certificate by the referee that "the case was both difficult and extraordinary within section 3253 of the Code of Civil Procedure, and that the plaintiff is fairly entitled to an additional allowance of costs against the defendant the Manhattan Trust Company." The conclusion at which we have arrived respecting the damages to which plaintiff is entitled removed the only obstacle which the court below found to granting an order for an extra allowance, and the motion for such allowance can now be properly entertained.

The judgment appealed from will therefore be modified so as to provide that the plaintiff is entitled to recover from the defendant Manhattan Trust Company as damages the sum of $200,000, with interest from March 1, 1898, and the order denying plaintiff's motion for an extra allowance will also be reversed, and the motion granted, by allowing plaintiff an extra allowance of $2,000, and as so modified the judgment will be affirmed, with costs to the plaintiff. All concur.