SILAS W. CRANDALL, Appellant, *v.* A. B. LEACH & Co., INC., and Another, Respondents, Impleaded with WILFRED E. FULCHER, Defendant.

Fourth Department, June 28, 1927.

Brokers — stockbrokers — fraud — action to recover damages based on false and fraudulent representations concerning property securing bonds — bonds never had market value — damages may be shown by proof of intrinsic value of property upon which they rest — in determining intrinsic value all circumstances must be considered — intrinsic value was question for jury — foreclosure decree some evidence of value of property.

This is an action to recover damages based on the alleged false and fraudulent representations made by the defendants which induced the plaintiff to purchase certain corporate bonds.

The measure of damages is the difference between the sum paid and the value of the bonds received with interest from the date of purchase. In this case, since the bonds had no market value, the proper method of determining the value of the bonds at the date of purchase was by proof of their actual value determined by the intrinsic value of the property upon which they rested. In determining intrinsic value, the entire surroundings of the corporation and all the facts relating to its property must be taken into consideration and from the evidence thus adduced the intrinsic value of the property securing the bonds at the time the purchase was made is to be determined.

The intrinsic value of the property and, therefore, the value of the bonds at the time of the purchase is a question of fact, and it was error for the court to grant a nonsuit upon the ground that there was no evidence that the plaintiff had been damaged.

The foreclosure decree under which the property of the corporation was sold, while not a final determination of the value of the bonds either at the time of

their purchase by the plaintiff or later, was, nevertheless, competent evidence for the jury to consider on the question of their value, and its exclusion from consideration on the question of damages was error.

APPEAL by the plaintiff, Silas W. Crandall, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Onondaga on the 9th day of November, 1925, upon the dismissal of the complaint at the close of the plaintiff's case, and also from an order entered in said clerk's office on the 12th day of January, 1926, denying plaintiff's motion for an order modifying and amending the minutes of the trial herein by inserting therein a clause to the effect that the granting of the motion for nonsuit was not upon the merits, but was for failure of proof of damages, and that the dismissal of the complaint was without prejudice to the plaintiff's right to institute a new action upon the same cause, and denying plaintiff's motion to vacate and set aside the judgment or resettle and modify the same so as to indicate that the dismissal of the complaint was without prejudice.

*A. Gordon Murray* [*John B. Doyle* and *Charles H. Kelby* of counsel], for the appellant.

*Elmer W. Maher* [*Harold H. Corbin* of counsel], for the respondents.

SAWYER, J. By two transactions, one upon January 1, 1920, and the other upon March 12, 1920, plaintiff purchased from the defendant A. B. Leach & Co., Inc., six of the " First Lien, Seven Per cent, Serial Gold Bonds" of the National Oil Company of New Jersey, paying therefor in cash and securities the sum of $5,800.

These purchases were made through negotiations with one Parker, a sales agent of the defendant, and were induced by representations and statements of Mr. Parker, together with those contained in a circular letter issued to the trade by the defendant corporation in the late fall of 1919, a copy of which was sent to plaintiff by Mr. Drake with a covering letter dated December 13, 1919. The circular, with its annexed documents, purported to contain a description of the issue of which the bonds were a part, together with a statement of the business and financial condition, recent and prospective, of the National Oil Company; a specification of its properties and, in general, of the worth of the company as well as that of the security and value of the bonds. Some two years later the National Oil Company submitted to a receivership, which was followed by the foreclosure of the indenture collateral to the bonds; upon the sale under such foreclosure there was realized only a fraction over $5.34 for each $1,000 bond. Plaintiff asks to recover for the loss thus sustained upon the theory that many of the statements contained in the circular letter and its

documents, together with certain of those made to him by Mr. Drake, were not only untrue in fact but were put forth with full knowledge of their falsity and with the express intent of inducing himself and others to rely upon their truth; that so relying he was thereby cheated and defrauded into his purchase and subsequent loss.

The defendants Arthur B. Leach and W. E. Fulcher were the president and vice-president respectively of the defendant A. B. Leach & Co., Inc., and, as its managing officers, were directly concerned with its affairs including the negotiations with the National Oil Company which led to the issuing and sale to the defendant corporation of the bonds in question as well as the issuing of the circular letter and the transactions which led to the purchase by plaintiff.

The record does not show that Mr. Fulcher has appeared or answered in the action, the issues tried being those raised by the second amended complaint and the joint answer of the corporate defendant and Mr. Leach. At the close of plaintiff's case the learned trial justice dismissed all the charges of fraud except one and then granted a motion for nonsuit upon the ground that there was no evidence that plaintiff had been damaged by the alleged fraudulent statements and, particularly, had failed to establish any damages as of the date of the purchase of the securities in question. He also denied a motion by plaintiff that the complaint be dismissed without prejudice and also declined to grant a new trial under the provisions of the 2d subdivision of rule 166 of the Rules of Civil Practice. Plaintiff appeals from the judgment of nonsuit, and from the refusal to incorporate in the minutes a statement that the nonsuit was not upon the merits but was without prejudice. Inasmuch as the trial court held that the evidence presented at least one question of fraud for determination by the jury and dismissed the action solely for lack of proof of damages, it is unnecessary to now consider the other allegations of fraud, notwithstanding our examination of the record leads us to believe that there was sufficient evidence to warrant submission to the jury of additional matters claimed by the plaintiff to have been fraudulent. No question of the proper measure of damages to be applied in a case of this character was or is raised. Court and counsel seem to have agreed that the rule laid down in *Reno* v. *Bull* (226 N. Y. 546, 552) is to be followed, viz., the difference between the sum paid and the value of the stock which he received, with interest from the date of purchase. It is not, however, necessary that the plaintiff show his loss with precise exactitude. (*Central Trust Co.* v. *West India Improvement Co.*, 144 App. Div. 560.)

The present difficulty appears to have arisen, not from any

misconception of the rule itself but from a misunderstanding of the character of the proof requisite to bring the action within its application. No witnesses were called to testify as to the value of the bonds, in dollars and cents, at the time of their purchase. The entire issue had been purchased by the defendant corporation for $4,600,000 and they had received therewith, gratis, stock of the National Oil Company of the par value of $3,750,000; the bonds were resold by it in small lots at about ninety-eight cents on the dollar and with each sale was given an option to purchase, for cash, prescribed amounts of the stock at prices nominated. It was manifestly impossible to fix the value of the bonds by market value; there was no market value other than that created by the defendants themselves, which was met by plaintiff in his purchase; so far as appears, their value has never since been established by the market. Under such circumstances their actual value must be determined as nearly as may be by recourse to the intrinsic value of the property upon which they rested. The reason for this rule of justice and equity has been succinctly laid down by our Court of Appeals, Judge VANN writing, in the following language: " The common law will not halt or surrender because the situation is novel and the ordinary methods of proving values are not available, but will resort to some practical means that will be just to both parties." (*Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 2. 5, 231.)

The rule of intrinsic value is now well grounded in our law and must be here applied. (*Industrial & General Trust, Ltd.*, v. *Tod, supra; Lewis* v. *Leach & Co., Inc.*, 199 N. Y. Supp. 32.)

In determining intrinsic value the entire surroundings are necessarily to be surveyed and the course of the properties for a reasonable time before and after taken into consideration. The court will take judicial notice that instances where securities arrive at practically par, or break therefrom to practically nothing within a day or so, are rare. Large and going concerns usually reach maturity by a slow growth and their downward progress is ordinarily equally gradual. This was the fact in the instant case. The record shows the history of the National Oil Company, its properties, development and results, the changes in its financial position and prospects, as same from time to time developed, until it finally fell into the hands of a receiver and its property was sold in foreclosure for a comparatively small sum. Studying the picture as a whole no great difficulty should be encountered in an arrival at an approximate value of the bonds in question from January to March, 1920, and, as we view it, there was sufficient evidence from which a jury might have in its judgment determined that

at the time of the purchase they were intrinsically worth much less than the sum plaintiff paid for them. The National Oil Company was a holding company. Its properties were owned by other corporations subsidiary to it and its control thereof rested upon its ownership of the stock of those subsidiaries. This was the only pledge to secure the bonds in question so that the actual properties but indirectly supported their value. There were six of these subsidiaries, which together held various oil leases upon lands in Mexico, Texas and Louisiana. These oil lands are claimed to be of large and substantial value, whereas as against such claim there is evidence from which a jury might have determined that the claim was exaggerated and that they, in fact, were of comparatively little worth. One of these subsidiaries had built a number of wooden ships of various kinds and at the time of the transaction in question was the owner of other ships, completed and in various stages of construction. It had sold ships of its building to the United States government and was under contract to construct others. They were all built at what seems to have been a large and well-equipped shipyard owned by it and which for some years had been in active operation. After the close of the war shipbuilding conditions changed and the case contains evidence from which a jury might have found that the value of this shipping property was considerably less than was assigned to it and upon which the bond issue was to some extent predicated. The adjusted report as of September 30, 1919, which presented a large apparent surplus of assets over liabilities, is, upon examination, susceptible of an analysis and interpretation exhibiting the financial position of the company to be much more precarious than appears on the surface of the report. For instance, the asset item of Liberty bonds of $256,000 makes no account of the loan for which bonds were pledged and afterwards used to pay. Notes and accounts receivable are stated to be $536,051, while similar items payable are $873,569. Eliminating from the sum set out as cash on hand the included sum of $4,600,000 received from defendant for the bond issue and which is more than offset by the obligation of the issue, there was in cash $126,073, an amount considerably less than required to meet the difference between the accounts and notes receivable and the similar items payable. Practically all the " Total Current Assets " recited were the property of the subsidiary companies and first subject to their individual debts, so that the stock of those companies, pledged for the payment of the bonds in question, with possible changing value, constituted the only current asset available instead of the properties themselves. A loan of $250,000 made by this corporate defendant to the oil

company does not appear in this report, while the value of the leases and other properties owned by the subsidiaries and carried in the report at $14,500,000 is sharply contested by the proofs. Other suggestions bearing upon the correctness of this report will readily occur to the careful reader, but sufficient has been said to indicate the reason why we have concluded that the intrinsic value of the property underlying these bonds and, therefore, the actual value of the bonds themselves at the time they were purchased by plaintiff, was upon the evidence, not a question of law but one of fact and that in taking the question of damages from the jury the learned trial court fell into error.

A number of other exceptions are called to our attention, but in view of this conclusion only one of them need now be mentioned. A new trial must be had and it, therefore, seems best to point out that the foreclosure decree under which the property was sold, while not a final determination of the value of the bonds, either at the time of their purchase by plaintiff or later, was nevertheless competent evidence for the jury to consider on the question of their value as well as for the purpose for which it was admitted and that its exclusion from consideration on the question of damages was error. (*Huntington* v. *Attrill*, 118 N. Y. 365; *Gill* v. *McNamee*, 42 id. 44; *Campbell* v. *Woodworth*, 20 id. 499.)

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

All concur. Present — Hubbs, P. J., Clark, Crouch, Taylor and Sawyer, JJ.

Judgment reversed on the law and a new trial granted, with costs to appellant to abide the event.