Louis A. Cholot, Appellant, Respondent, *v.* Edward C. Strohm and Another, Respondents, Appellants.

First Department, April 15, 1932.

*Isaac N. Jacobson* of counsel [*May & Jacobson*, attorneys], for the plaintiff.

*Donald M. Newman* of counsel [*Lawrence Morganroth* with him on the brief; *Henry J. Uderitz*, attorney for Edward C. Strohm; *Donald M. Newman*, attorney for Fox Brothers & Co., Inc.], for the defendants.

SHERMAN, J.    Plaintiff recovered a verdict against defendants in the sum of $20,000 which was set aside by the trial court.    Plaintiff appeals from that order and defendants also appeal from so much thereof as denies their motion to dismiss the complaint on the merits.

A *résumé* of the facts is necessary.

In November, 1926, plaintiff became associated with the New England, New York and Texas Steamship Corporation, known as the Newtex Line, in the capacity of general manager in charge of operations.    This company (which for brevity is to be referred to as Newtex) had been organized about June, 1926, with a capital stock of $100,000 preferred and $50,000 common.    Plaintiff owned no stock in that corporation, all of the issued shares belonging to Mr. Davison and Mr. O'Toole, who appear to have been officers of that corporation.    The Newtex Line had four steamers in operation in 1926, and its fleet was increased to five vessels in 1927, all of which were engaged in carrying freight cargoes between Texas and North Atlantic ports.

These vessels had been purchased from the United States Shipping Board, which held mortgage liens thereon amounting at the end of February, 1927, to $117,000, besides which there were other mortgages on some of the boats, held by the Baltimore and Tampa Steamship Company, and the Robins Drydock and Repair Company, aggregating $93,778.80.    In addition to that mortgage

debt, the line owed $227,870.79. Unpaid salaries to O'Toole and Davison amounted to $14,000. Losses from operation then exceeded $254,000. The company perhaps, however, had built up a good will and it may have been felt that, with additional capital, it could continue in business. The alternatives which confronted it about the beginning of March, 1927, were that new capital had to be invested in the undertaking or bankruptcy was inevitable.

O'Toole and Davison sent plaintiff on a mission to enlist new capital. During that month, O'Toole directed him to see Bockstahler, vice-president of the United States Freight Company. Bockstahler introduced plaintiff to defendant Strohm, chairman of the board of directors of that company. Plaintiff explained to Strohm the financial situation of the Newtex Line and showed him a statement of its liabilities. At first, Strohm stated that he could wait until the line went into bankruptcy and then buy in the ships at a cheap price. Plaintiff pointed out that the business was a going transportation line; that a good will had been established with various shippers which would be destroyed during the pendency of bankruptcy proceedings. Strohm then asked plaintiff upon what terms the line could be bought. Plaintiff reported to O'Toole his dealing with Strohm and continued the negotiations. Strohm declined to lend any money to the Newtex Line, but offered to buy the company, dependent upon what Davison and O'Toole wanted. In the course of these discussions, plaintiff said to Strohm: " What am I to get * * * out of this deal? " and Strohm replied: " I will give you some stock in this company when it is reformed, because eventually this stock is going to be valuable and you will be well compensated for what you do and have stock. I intend to sell this company to the United States Freight Company, of which I am chairman of the board. * * * Your stock, the amount of which I will name later, will fully compensate you and more so for what you are doing."

The following day plaintiff took O'Toole to see Strohm and terms were discussed. Strohm said he would reorganize the company and eventually sell it to the United States Freight Company. Another conference followed at the office of the freight company attended by plaintiff, O'Toole, Davison, Strohm and Bockstahler. It was finally agreed that Davison and O'Toole were each to receive 1,500 shares of the reorganized company, which would be recapitalized at 10,000 shares. Strohm thereupon gave Davison and O'Toole a letter dated March 18, 1927, which set forth that in consideration of their turning over the entire stock issue of the Newtex Company, he would recapitalize it, cancel the preferred

stock and increase the issue of common stock to 10,000 shares, of which 1,500 shares would be turned over to each of them.

At the conclusion of this conference, Strohm called plaintiff back and in Bockstahler's presence informed plaintiff: " I am now going to give you stock in the amount which I promised you, and the amount, I will tell you, is 500 shares." Bockstahler corroborated plaintiff's testimony as to Strohm's promise. Plaintiff, having rejoined O'Toole and Davison, told them what he was to get from Strohm, to which they made no objection.

The arrangements for reorganization of Newtex were consummated and Strohm took over control. The 10,000 shares of no par value common were issued, Davison and O'Toole each receiving 1,500 shares, and 7,000 shares were issued, at Strohm's direction, to defendant Fox Brothers & Co., Inc., of which he was president and sole shareholder. Strohm then became president and treasurer of Newtex and plaintiff continued as a vice-president and general manager.

Plaintiff made requests from time to time for the 500 shares of stock, but each time Strohm put him off. Finally in December, 1927, after plaintiff's resignation had been requested, Strohm declined to deliver the shares and committed the breach upon which plaintiff relies as constituting the basis for this action.

Plaintiff was discharged shortly after a meeting of the directors of Newtex on December 2, 1927, at which Strohm said to them that Fox Brothers & Co., Inc., would make no further advances of money, and that Newtex would have to turn over the ships to that company for the money already loaned. The minutes of that meeting of the directors, at which plaintiff was present as a director, show that a resolution was unanimously carried directing that " all assets of whatever nature " of the corporation, including the good will, be transferred to Fox Brothers & Co., Inc., in consideration of the latter's assuming all liabilities of the former and canceling the company's indebtedness to Fox Brothers & Co., Inc. There is no question that Strohm dominated that meeting.

In the following month, about January 19, 1928, an agreement was made by defendants for the sale of these assets to the United States Freight Company. It recites that Fox Brothers & Co., Inc., had recently acquired all the assets of the Newtex Line, and that " Strohm is also a large stockholder " of Newtex " and the owner of all of the capital stock of Fox Brothers & Co., Inc." It provides that Fox Brothers & Co., Inc., sell the five ships of the Newtex Line, clear of incumbrances, and all its furniture, records and freight contracts " together with its good will as a going concern and the use of its trade name, Newtex Line; " also all dock leases

or terminal facilities. Fox Brothers & Co., Inc., and Strohm agreed, among other things, to discharge the debts and liabilities of the Newtex Line, contingent and actual, among which were unpaid Federal and State taxes, and the defense and settlement of a pending law suit. Strohm also agreed to transfer to the freight company 167 shares of stock of the Lone Star Freight Company, which was a soliciting and freight forwarding agency, having a total capitalization of 250 shares of a par value of $25,000.

In consideration of these covenants covering the transfer of all the assets and property of Newtex Line and the 167 shares of the Lone Star Freight Company, the United States Freight Company agreed to transfer to Fox Brothers & Co., Inc., to Strohm, or to it or his nominee or nominees, 12,000 shares of its no par value capital stock. This transaction was consummated on February 1, 1928.

Plaintiff undertook at trial to show the value of the 500 shares of Newtex in December, 1927, by evidence as to the value of the United States Freight Company stock, which had been listed on the New York Curb Exchange. His only proof on that subject is that on February 1, 1928, there was one transaction in those shares on that exchange at the price of $78.25. There was no evidence of the value of the 167 shares of the Lone Star Freight Company stock, which formed part of the consideration for ·the 12,000 shares of the United States Freight Company stock.

Plaintiff endeavors to sustain this recovery upon a computation in which he deducts from the total value of the 12,000 shares of the United States Freight Company, figured upon the basis of its market value of February 1, 1928, the amount of the actual (but not the contingent) liabilities of the Newtex Company and the par value of the Lone Star Freight Company stock. He failed to take into consideration that defendants agreed to pay not alone those known liabilities but also the contingent debts, the amount of which was not established, such as Federal and State taxes, possible judgments and other claims. The verdict is plainly excessive and on no theory can it be justified by the evidence.

There being no proof of the market value of Newtex stock, plaintiff in endeavoring to show that it had intrinsic value was confronted by the fact, conceded by his counsel, that the company had made no profit and had operated at a loss. The financial statement showed a large excess of liabilities over assets. No dividends had ever been paid. With its deficit increasing each month, the company was in fact insolvent when its board of directors voted to turn over the assets to Fox Brothers & Co., Inc., in consideration of the latter assuming the liabilities. Therefore, at

the time of the breach, plaintiff's shares were probably valueless, except for the possible item of good will.

Plaintiff was of course entitled to have the jury consider the element of good will in determining the value of stock which he was to receive. (*Von Au* v. *Magenheimer*, 115 App. Div. 84, 86.) " It sometimes happens that the good will of a business, as, for instance, a newspaper establishment, constitutes the greater part of its value, and it may be the subject of contract and sale the same as any other species of property." (*Freeman* v. *Freeman*, 86 App. Div. 110, 113.)

The evidence shows that, notwithstanding the losses from operation, the volume of business and number of customers increased from March, 1927, when Strohm took the line over, until December, 1927, when plaintiff was discharged. Money had been spent for advertising in working up the business, and, as a going concern, this transportation line may be found to have had " good will." Strohm's purpose to build up the Newtex Line and then sell it to the United States Freight Company was revealed when Strohm first became interested in the Newtex Company. That freight company did not have any ships running between the New England States and Texas, nor had it acquired any line or boats of its own at the time the negotiations were under way for the acquisition of the Newtex Line. Bockstahler testified that this company (the United States Freight Company) was the largest individual shipper on the Newtex Line, and that negotiations for its purchase had begun in the month of October and continued to December, preceding the sale in January, 1928. These negotiations were, therefore, going on prior to plaintiff's discharge. It may have been considered by the United States Freight Company that the Newtex Line had good will as a part of the assets thus sold, when it paid the agreed consideration, being 12,000 of its shares.

A further difficulty is that there is no direct testimony by way of appraisal as to the value of that element of good will, and we hold that the proof as to plaintiff's damage is inadequate. Though plaintiff is not required to prove his loss " with precise exactitude " (*Central Trust Co.* v. *West India Improvement Co.*, 144 App. Div. 560, 565), competent evidence of the value of the good will of the Newtex Company under the conditions which surrounded it at the date of the breach, fairly establishing the worth of this incorporeal asset, must be supplied as a factor in determining the intrinsic value, if any, of the shares promised to plaintiff. (*White Corbin & Co.* v. *Jones*, 79 App. Div. 373, 377.) If the assets, with the value of " good will " thus included, be shown to exceed the company's total liabilities, the value of plaintiff's shares may be found

by a jury. Plaintiff may also be able upon a new trial to show the intrinsic value of the Lone Star Freight Company's stock, if that shall turn out to be material.

Under the circumstances, we cannot deny to plaintiff the opportunity of making proof of his damages, if he can.

We now turn to defendants' contention that no cause of action was shown against them.

They assert that the complaint should be dismissed on the ground that plaintiff's contract is against public policy, and in violation of section 439 of the Penal Law■ Defendants, however, did not plead illegality. Moreover, it affirmatively appears that plaintiff told O'Toole and Davison, the owners of the Newtex Line shares, what compensation he was to receive from Strohm. Under these circumstances, this statute has no application. Strictly speaking, plaintiff was acting as a broker for them in selling their shares; they knew that Strohm was compensating him for his services.

Defendants also contend that no contract was proved between Strohm and plaintiff in that there was no consideration for the promise to give plaintiff the 500 shares. This question was fairly submitted to the jury and their verdict thereon is supported by evidence. As general manager of the Newtex Line, plaintiff was not bound in the performance of his duties to sell the shares of O'Toole and Davison. He had no employment in that respect and received no compensation therefor. Consideration is spelled out of the fact that Strohm asked plaintiff to find out the terms upon which he could acquire the company, followed by service in aiding the consummation of the purchase. The proof presented a jury question in that behalf. (*Trustees of East Hampton* v. *Vail*, 151 N. Y. 463, 470.)

The order appealed from should be affirmed in all respects, without costs.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur.

Order affirmed, without costs.