George Fanelli, J.
In this action for a declaratory judgment plaintiff seeks a determination declaring that defendant Kirby is obligated to account and pay him 4% of all proceeds received by Kirby from the exploitation by publication in daily and Sunday newspapers of the cartoon comic strip known as “ Sky Masters ” as well as a similar percentage received by Kirby from sources other than from said publication, and for other incidental relief.
The parties to this litigation are men engaged in a substantial industry dealing, among other things, in the development, production and preparation of cartoon comics and comic strips. Plaintiff is an editor of National Comics, Inc., a magazine dealing primarily in the publication of cartoon comic books, and defendant Kirby is a free-lance artist, who in 1957 and 1958, received (as an independent contractor) certain assignments from plaintiff in his capacity as an editor while acting on behalf of his corporate employer.
It is plaintiff’s contention that in January 1958 one Harry Elmlark, general manager of the George Matthew Adams Service, a newspaper feature and cartoon syndicate, solicited *787 plaintiff with the view of obtaining a cartoon strip for his syndicate dealing with the subject matter of space science fiction; that, while plaintiff’s employer indicated a disinterest in such a project, nevertheless, plaintiff, as one of its editors, was authorized to undertake such a strip disconnected with his employment and as his individual project with the use of freelance writers and artists; that plaintiff communicated this information and inquiry to one David Wood, a free-lance writer, who in turn contacted defendant Kirby; that at first all three men discussed the possibility of producing the strip as a joint venture upon a proportionate percentage basis in which plaintiff was to receive a 50% share, but later plaintiff, because of other commitments, withdrew from the enterprise and arranged an interview between Elmlark, Wood and Kirby upon the agreement that, if their work met with the approval of Elm-lark and if they ultimately received a contract with his syndicate, then he, plaintiff, would be entitled to a percentage of the proceeds to be received in consideration of his bringing to their attention such business opportunity; that, upon Elm-lark’s receiving some acceptances of the strip as prepared by Wood and Kirby, they entered into a temporary arrangement or binder with Elmlark’s syndicate; that later a dispute arose between Wood and Kirby as to their participation in the proceeds to be received which dispute was ultimately compromised by plaintiff and at which time it was orally agreed that plaintiff was to receive 4% of their share in the proceeds of the strip; that, on April 15, 1958, to memorialize said oral agreement, Kirby and Wood signed a notation, prepared by plaintiff, to the effect that he was to share in this comic strip to the extent of 4% of the total amount earned jointly therefrom by Wood and Kirby; that on May 13, 1958 a written agreement was entered into between Wood and Kirby, each of whom was then represented by his own attorney, wherein they agreed between themselves as to a distribution of the proceeds to be received, and in which agreement they again in two instances recognized and agreed that from the proceeds to be received from the exploitation of the “ Sky Masters” strip plaintiff was to receive 4% thereof for his said contact; that ultimately Wood and Kirby obtained a written contract with the syndicate (the (reorg’e Matthew Adams Service) under date of May 14, 1958; and that, while Wood has been paying plaintiff the 4% of his proportionate share of the proceeds received by him from the syndicate, defendant Kirby has at all times refused to make any such payments.
*788 Defendant’s version of the transaction is at variance with that of plaintiff. He resists such payments and has taken the position, inter alia, that at no time did the parties ever intend that plaintiff was to receive 4% or any other portion of the proceeds to be received from such strip; that the contact made possible by plaintiff through his meeting Elmlark was in the nature of a favor — a gratuity; that, while the notation signed by him on April 15, 1958 referred to plaintiff “as agent”, plaintiff has in fact performed no services other than to pass on to him (and Wood) the inquiry made by Elmlark in January 1958; that the oral agreement alleged by plaintiff violates the Statute of Frauds in that by its terms it was not to be performed within one year; that the agreement of May 13, 1958 is of no benefit to plaintiff since it was neither signed by him nor delivered to him by the defendant; that the notation signed by him on April 15, 1958 created an agency relationship and that plaintiff has failed to perform any services required of him as agent; that both the April 15, 1958 and the May 13, 1958 agreements were executed by him under coercion, duress and undue influence; and that the consideration for said latter written agreements was not only a past or executed consideration but was also in truth no consideration at all since it was merely a gratuitous accommodation.
After a careful consideration of all the testimony and the exhibits, it is the court’s opinion that the weight of the credible evidence adduced sustains plaintiff’s position with respect to the facts and circumstances surrounding the original meeting of the parties and their subsequent dealings and conversations, and the court finds from a preponderance of the credible evidence that, from the time defendant Kirby was first called into the picture concerning the possible production of the strip (finally called “ Sky Masters ”) and its exploitation by the George Matthew Adams Service (syndicate), he, Kirby, agreed that plaintiff was to participate on a share basis the proceeds ultimately to be received, and that plaintiff’s making the contact possible and his bringing such business opportunity to the attention of Kirby and Wood was not in the nature of a favor or gratuity, but rather was something for which all the parties intended he was to receive compensation despite the fact that plaintiff might not in the future be called upon to render any further services.
Adult persons, suffering from no disabilities, have complete freedom of contract and courts, as a general rule, should not inquire into the adequacy of the consideration nor admeasure *789 the quantum thereof. The fact that the bargain may be a hard one will not deprive it of validity and, under the circumstances in this ease, it cannot be said that the bargain provided for is grossly unreasonable or unconscionable (see Mandel v. Liebman, 303 N. Y. 88). It is quite apparent that defendant Kirby was the best judge of the worth of plaintiff’s contact and of the business opportunity afforded him and made possible through the George Matthew Adams Service, and of the price he wished to pay for them. It is not for this court to decide whether 4% of defendant’s earnings is excessive or inadequate or whether defendant made a good or bad bargain.
The defenses urged by defendant in his amended answer as well as the matters raised in his memorandum of law have been considered and found to be without merit. Taken together the notation of April 15, 1958 and the agreement of May 13, 1958, both signed by defendant Kirby, unquestionably satisfy the Statute of Frauds (Personal Property Law, § 31) and constitute the “memorandum” of the agreement within the meaning of the statute. The fact that they were made after the oral agreement is of no moment since it is the oral contract which plaintiff seeks to enforce in this action. So long as the memorandum is made before action is brought, it satisfies the Statute of Frauds and need not be contemporaneous with the oral agreement (see 2 Williston, Contracts [rev. ed. 1936] § 590; Crabtree v. Elizabeth Arden Sales Corp., 305 N. Y. 48 and cases cited therein; 2 Corbin, Contracts [1950] § 503). Moreover, delivery of all or part of the memorandum demanded by the statute is not required (see 2 Williston, Contracts [rev. ed. 1936] § 579A; 2 Corbin, Contracts [1950] § 510) nor is it necessary that the writing be from the promisor to the promisee (Marks v. Cowdin, 226 N. Y. 138, 145; 2 Corbin, Contracts [1950] §§ 508, 516).
The agency theory advanced by defendant, as well as that of coercion, duress and undue influence, are found to be factually untenable and are overruled because of failure of proof. Not only is the agency theory contradictory to the credible evidence adduced, but there is absent from the record any proof of a demand for services by defendant Kirby of plaintiff under any such alleged agency agreement and any refusal or failure on the part of plaintiff to perform any such services. In the light of the fact that the uncontroverted evidence indicates that plaintiff’s employer was well aware of plaintiff’s participation with defendant Kirby (and Wood) in the instant transaction and that said employer had in fact affirmatively suggested and encouraged such a relationship, section 439 of the Penal Law *790 which forbids the corrupt influence of agents, employees and servants and which was enacted principally for the protection of employers, has no application (see Cholot v. Strohm, 235 App. Div. 150; June Fabrics v. Teri Sue Fashions, 194 Misc. 267). It is quite clear from a reading of section 439 that its whole purpose and intent is to void corrupt behavior which influences the employee’s performance of liis duties for his employer. In the case at bar, Mr. Jack Liebowitz, vice-president and general manager of National Comics, Inc. (plaintiff’s employer) testified without contradiction that said corporation was not interested in producing a space science strip and that he gave his consent and permission to plaintiff’s participation in any such venture either on his own behalf or in association with Wood and Kirby.
Finally, there remains the contention that the consideration for the agreement alleged by plaintiff was a past consideration. Here, too, defendant is in error in view of this court’s finding that such an agreement was actually made between the parties. The written instruments of April 15, 1958 and May 13, 1958 might very well be considered as being practically contemporaneous under the circumstances and the testimony adduced in this case. Moreover, even if it were considered a past consideration, the agreement of May 13, 1958, signed by defendant Kirby, voids such claim in view of the provisions of subdivision 3 of section 33 of the Personal Property Law.
Accordingly, the court is of the opinion that this is a proper case where its discretion should be favorably exercised to the extent of pronouncing a declaratory judgment in favor of plaintiff for the relief demanded in the complaint, together with costs. ' A justiciable controversy exists between the parties as to the validity and effect of the agreement in question and as to the respective rights and obligations of the parties by virtue thereof, and where, as here, a complete and final determination of their rights and obligations are not readily obtainable in another form of action, a declaratory judgment action is the proper remedy.
Findings of fact and conclusions of law having been waived by the parties, this opinion constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Submit, judgment on notice.