Besttley Kassal, J.
Defendant owner (referred to as “ owner ”) moves for summary judgment, and plaintiff tenant (referred to as “tenant”) agrees there is no triable issue of fact and ‘ ‘ only a question of law or legal interpretation of a document is really involved herein ”.
The issue is whether the 72-page printed lease requires the tenant to make one or both of the following payments, in addition to the regular stipulated minimum rental:
(1) Ten per cent of any excess gross income over $550,000, up to $600,000, plus 20% of any excess gross income over $600,000 (Lease, dated Feb. 19, 1960, art. 5 — Gross Income, § 5.01).
(2) An annual charge in a sum equal to 10% of the gross rental annual income accrued above $550,000 for each previous year (First par., commitment letter from the Prudential Insurance Company of America, dated November 18,1959, annexed to lease as Exhibit A, assumed by tenant in § 4.02 of the lease proper, top of p. 17).
Owner contends that items (1) and (2) are both required to be paid by plaintiff tenant as separate and distinct obligations, in that item (1) represents “ additional rent ” due landlord and item (2) is an interest charge due the mortgagee under the mortgage commitment letter.
Tenant contends that these two obligations are the same and duplicative and that tenant is only obligated to pay the mortgage commitment charge which is item (2). Furthermore, tenant maintains that any other interpretation would render the lease economically unfeasible and unprofitable.
I agree with the owner. In my judgment these are two separate additional obligations, not duplicative, and both must be paid by the tenant.
The lease contains many articles including the following captions:
Article 2 — Bent.
Article 4 — Demolition and Erection of New Building.
Article 5 — Gross Income.
*273 Although section 30.02 (p. 61) indicates expressly that the lease captions are for convenience and reference only, they nevertheless give a frame of reference as to the basic structure and understanding of the leasehold arrangement.
Article 2, entitled Rent, sets forth the base rent, which commences at a net annual rental of $50,000 per annum until the payment of interest and amortization commences under the annexed commitment letter, at which time the net rental then becomes $226,000.
Article 4 contains the provisions applicable to the demolition of the existing building and construction of proposed improvements, and tenant expressly assumes all such obligations pertaining to mortgage financing in section 4.02. This is by way of an express assumption by tenant of the performance of all the terms and conditions of the mortgage commitment letter from the Prudential Insurance Company of New York, dated November 18, 1959, annexed to the lease as Exhibit A. Section 4.04 provides for the establishment by landlord of an “ interest and amortization account” into which it will pay the annual mortgage interest and amortization ($176,000) pro rata out of the $226,000 annual rental.
Article 5, entitled ‘ ‘ Gross Income ’ ’, and specifically section 5.01, obligates tenant to pay to landlord “ as additional rent ” 10% of the excess, if any, of gross income over $550,000 up to $600,000, plus 20% of the excess, if any, of gross income over $600,000 (emphasis added). “ Gross income as in this agreement shall include but not be limited to any and all rentals, income from services and all gross amounts of every kind and nature received by the tenant from any and all persons, tenants and/or occupants for, or in respect of, any use or occupation of any apartment, garage and/or other space in the building or premises or any part of the entire demised premises.” Section 5.04, in article 5, spells out ‘‘ nothing herein contained shall constitute a partnership between the landlord and tenant by reason of the percentage rent payable hereunder or otherwise.”
Schedule “ A ” annexed to the lease contains the said mortgage commitment letter of November 18, 1959 from the Prudential Insurance Company, which was assumed by tenant (§ 4.02, p. 17). The essential terms, for purposes hereof, are the requirement for quarter-annual installments of $44,000- on account of interest and principal. It provides for a further conditional sum to be paid as follows: “In addition to the stated payments to be made on account of interest and principal there *274 is to be paid by the mortgagor to the mortgagee until the principal shall have been repaid in full an annual charge in a sum equal to 10% of the gross rental annual income accrued above $560,000 per annum for each previous year.” (Emphasis added.)
There are various factors which lead me to the conclusion that these two obligations are several and not duplicative. They are:
(a) The mortgage commitment letter defines this sum differently than the lease. The commitment letter states ‘1 an annual charge in a sum equal to 10% of the gross rental annual income above $550,000 per annum for each previous year.” The lease states tenant shall pay to landlord ‘ ‘ as additional rent, ’ ’ 10% of the excess, if any, “ of gross income ” [not gross rental income] over $550,000 up to $600,000 plus 20% of the excess if any. “ Gross income * * * shall include but shall not be limited to any and all rentals, income from services and all gross amounts of every kind and nature received by the tenant ”. The lease provision, therefore, differs from the commitment letter in the following material respects:
(1) The lease provides for 10% in excess of $550,000 and 20% over $600,000. The commitment letter only provides for 10% in excess of $550,000, without further limitation.
(2) The lease directs that the percentage be applied to all gross income, including rentals, income from services and gross amounts of every kind and nature. The commitment letter specifically limits the “ annual charge ” to gross rental income and it does not include the other categories of income.
(b) The lease contains a separate article 5, entitled “ Gross Income ”, directing that the tenant shall pay landlord the above percentage sums as “additional rent”. Article 4, entitled “ Demolition and Erection of New Building ”, provides in section 4.02 “Subordination and Mortgage Financing” for the express assumption by tenant of the Prudential mortgage commitment agreement annexed to the lease as Exhibit A. The former, as additional rent, is an obligation due landlord and the latter is a mortgage charge, due mortgagee.
(c) The commencement dates of the fiscal periods for determining the percentage increases are different, namely:
(1) “ Additional rent ” payable to the landlord under article 5 is to be computed on a “ lease year ’ ’ basis. Page 1 of the lease defines the lease year as running from March 1 to February 28. The fiscal year for the mortgage 11 additional charge ’ ’ due the mortgagee runs from May 1 to April 30 (see Exhibit I, letter from Prudential, dated May 15,1970-, and Exhibit III letter from Bernard D. Kleinman and Co., accountants of tenant herein set *275 ting forth the fiscal year. Both exhibits are annexed to the reply affidavit herein). Furthermore, the mortgage commitment letter provides that the payment of interest, principal and the annual charge shall be made quarterly, with the first payment to be one-quarter year from closing. This is further proof that this is a separate and distinct obligation since the fixed rental year dates as of March 1st and not in relation to a closing date.
(d) Further evidence of the parties’ intention and understanding is contained in mortgage agreement dated November 17,1961 between the previous owner and Prudential. (Annexed as exhibit “ E ” to the answering papers herein.) The second typed paragraph on page 1 spells out that the 10% of excess gross income due to be paid the mortgagee in the mortgage commitment letter is 1 ‘ additional interest ’ ’. Parenthetically, the next paragraph spells out that the fiscal year for this purpose is the calendar year.
Tenant raises the further argument pertaining to the economics of the bargain in that “ these payments would completely destroy the value of the tenant’s leasehold”. In essence, the tenant would seek to have the court reform an agreement not on the basis of mistake or unconscionability but because of the alleged bad economics of the transaction. This is not, and should not be, the province of the courts, absent other factors.
If we were to place tenant’s argument in proper perspective and for consistency, we should consider this situation. Suppose we had a net lease which only contained a provision for a base net rental and none for “ additional rental”. Let us further assume that, as is the case, the cost of living continued to spiral upwards so that, as a result, the net rental paid landlord proved to be relatively small and unreasonable as a fair return on the then inflated value of the investment for the land and building. Under those stated circumstances, would the tenant herein contend that the owner should have the right to redress in the courts by way of a reformation of the lease for an increase in the rentals ? Obviously not and the tenant would be the first to cry that the issue of the economics of a lease transaction is not one for the courts and “ a deal is a deal ”.
‘ ‘ It is competent for the parties to make whatever contracts they may please, as long as there is no fraud or deception or infringement of law. Hence the fact that the bargain is a hard one will not deprive it of validity.” (17 C. J. S., Contracts, § 127 ; Mandel v. Liebman, 303 N. Y. 88 and cases cited, p. 93 ; Mencher v. Weiss, 306 N. Y. 1, 8 ; Coleman v. McClenahan, 149 App. Div. 299; Schiff v. Kirby, 22 Misc 2d 786.)
*276 I conclude, therefore, that the tenant is obligated under the lease to pay two separate and distinct obligations, as follows:
(a) As additional rent due to the landlord, a sum equal to 10% of the excess of gross income as defined in section 5.01 of the lease over $550,000 up to $600,000 and 20% over $600,000. The fiscal year is March 1 to February 28.
(b) As additional interest due to the mortgagee, Prudential Insurance Company of America, a sum equal to 10% of the excess over $550,000 of the annual gross income, as defined in mortgage agreement dated November 17,1961 between 399 East 72nd Street Corp., and the Prudential Insurance Co. of America. The fiscal year is the calendar year, since this supersedes the commitment letter of November 18,1959.
Accordingly, summary judgment is granted to the defendant dismissing the complaint herein, on the merits.